587 So.2d 732 (1991)
William D. BROWN, Appellee,
v.
Don WILLIAMS (Harry R. Coleman, Jr.), Appellant, Intervenor.
No. 22716-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1991.
*734 Jimmie D. Marshall, Jackson, Miss., H. James Lossin, Sr., Jonesville, Brook, Morial, Cassibry Fraiche & Pizza by James H. Brown, Jr., Baton Rouge, for appellant.
Theus, Grisham, Davis & Leigh by Sharon Ingram, Brown & Wicker by William D. Brown, Monroe, Captan Jack Wyly, Lake Providence, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The plaintiff, William D. Brown, filed this suit seeking a judgment declaring that he did not owe any real estate fee or commission to the defendant, Don Williams, a licensed Louisiana real estate broker, and that no contract, agreement or other commitment existed between them. Williams reconvened, claiming a real estate commission of $212,500. Ray Coleman, a real estate broker not licensed in Louisiana but allegedly Williams's "associate" on the transaction, filed a petition of intervention, aligning himself with Williams for part of the fee from Brown; in the alternative he claimed a real estate commission from Williams. Brown contested the intervention, citing a Louisiana statute that prohibits an unlicensed realtor from filing a suit or recovering a commission in Louisiana. The trial court dismissed the intervention but on writ application this court reversed in part, allowing Coleman to intervene for the limited purpose of asserting his claim against Williams. At the trial court level neither Coleman nor Williams urged that the Louisiana statutes or regulations were unconstitutional. The trial court held that Coleman had not complied with the statutes and regulations and could not claim a commission from Williams; it also found no valid agreement between Brown and Williams for a commission. The court therefore granted judgment as prayed for and rejected the claims of Coleman and Williams, who now appeal. For the reasons expressed, we affirm.

Factual background
The transaction that generated this dispute was William Brown's sale of two "islands" called Henderson Island and Newman Towhead, which are located on the east side of the Mississippi River but within the boundaries of Louisiana and East Carroll Parish. Brown had bought the property in early 1985, intending to harvest the timber on both islands, syndicate Henderson Island as a hunting club and sell the smaller island, Newman Towhead, outright. For Newman Towhead Brown granted a non-exclusive listing in December 1985, and an exclusive listing in June 1986, to McCarty and Gates, realtors in Arkansas. The asking price was $2.2 million. Around the same time he also listed Newman Towhead with Coldwell Bankers, but neither realtor produced a buyer. Brown was also unsuccessful in syndicating Henderson Island.
In late summer or early fall 1986, Mr. Gates phoned Brown to say he had found an "aggressive young man" in Mississippi, Ray Coleman, who would be helpful with selling Newman Towhead or syndicating it for a hunting club. Coleman, who is a licensed realtor in Mississippi but not in Louisiana, met with Brown at Brown's office in August 1986. According to Brown, they agreed that Coleman would attempt to sell shares, at $65,000 each, in the proposed Newman Towhead hunting club, and nothing more; the only unsettled point was how many shares Coleman must sell in order to receive one share as commission. According to Coleman, they reached this agreement but also agreed, in this and another meeting in August 1986, that Coleman could attempt to sell Henderson Island outright. Coleman also testified that by September he had a "confirmed commitment" to sell either or both islands for a 5% commission. Brown denied authorizing Coleman to sell anything but shares; on September 23, Coleman handed him a proposed listing agreement to sell Henderson Island for $4.75 million at a 5% commission, but Brown refused to sign.
Coleman understood that without a Louisiana license he could not sell realty in the state, but knew he could do so if he associated with a licensed Louisiana real estate *735 broker. He testified that he phoned Don Williams, a licensed broker in New Roads, Louisiana, in late August or early September 1986. They never made a written agreement. Coleman, however, testified that they orally agreed to associate; if Williams produced a buyer, he would receive 50% of the commission, and if Coleman produced a buyer, Williams would receive only 25%; and Coleman did not expect Williams actively to pursue the project. Coleman also testified that in one of their August 1986 meetings, he told Brown that he had associated Williams.
One of Williams's witnesses, a Mr. Anderson from Jackson, Mississippi, testified that Coleman was showing him the Newman Towhead hunting lodge right after Thanksgiving Day, 1986, and introduced him to Brown. On that occasion, Anderson testified, Brown stated that Williams was Coleman's Louisiana associate.
Williams testified that he spoke to Coleman about the sale in Greenville, Mississippi in the fall of 1986; Coleman said he had a listing to sell some Louisiana property for $4 million. Williams never saw any listing agreement between Brown and Coleman, and admitted that he himself never executed any writing with Coleman. He testified, however, that he orally agreed to serve as Coleman's sponsoring broker, and agreed to receive 50% of the commission if he produced a buyer. Williams never communicated with Brown until after the sale.
Brown testified that Coleman never mentioned any association with Williams; in fact, Brown first spoke to Williams only in 1987, after he sold the islands and Coleman demanded a fee. The syndication of Newman Towhead never succeeded, though everyone admitted that Coleman spent a great deal of time and money trying to make the project work. Brown ultimately sold the islands to Mrs. Magalen Bryant, a wealthy conservationist from Virginia, for $4.25 million in June 1987, with Brown reserving timber rights.
Coleman and Brown each felt that he, and not the other, had brought Mrs. Bryant to the table. Brown insisted that she was his lead and he categorically told Coleman not to pursue her. Coleman denied this and asserted that Brown told him to do whatever was necessary to move the property and free Brown of the $5.5 million debt he had incurred to buy it. Mrs. Bryant testified that Coleman had been "totally responsible" for bringing her to the closing. She could not disagree, however, that it was Brown's willingness to drop the asking price from $6.25 million to $4.25 million less the timber, that finally induced her to buy.
Despite his position that he never authorized Coleman to sell the islands outright, Brown admitted that if Coleman had produced a buyer and a price high enough to cover Brown's indebtedness on the property plus a commission, Brown would have paid that commission. Coleman admitted that after this transaction, he went to work for Mrs. Bryant.

Compliance with Louisiana's regulations
By their first assignment Williams and Coleman urge the trial court erred in finding they did not comply with the Louisiana Real Estate Commission regulations. They argue they intended to comply and should not be penalized for minor deficiencies.
The court initially noted that Coleman, by his own admission, did not have a Louisiana license even though he was selling or attempting to sell Louisiana property. Prior to a 1989 amendment, La.R.S. 37:1436 provided:
§ 1436. License required
It shall be unlawful for any person, directly or indirectly to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker or real estate salesman within this state without first obtaining a license as such broker or salesman, as provided in this Chapter, unless he is exempted from obtaining a license as specified herein. * * *
Moreover, without a valid license Coleman was not entitled to sue for or recover a commission for the sale of Louisiana real *736 estate. La.R.S. 37:1445. The exemption for a nonresident appears in La.R.S. 37:1437 E, which provided:
A nonresident, licensed in his resident state and whose resident state permits a Louisiana resident to obtain a broker's or salesman's license and engage in the real estate business in that state, may obtain a broker's or salesman's license and engage in the real estate business in this state under conditions prescribed by the commission. Such conditions shall be equal to or more onerous than the conditions applicable to a resident of Louisiana which are prescribed by the state of the nonresident.
Coleman presented no evidence that Mississippi permits a Louisiana resident to obtain a broker's or salesman's license. The trial court's finding that Coleman was not a qualifying nonresident real estate broker is not plainly wrong. Coleman was not entitled to sue Brown for a real estate commission.
Coleman's only other avenue of recovery was against Williams, if he could prove a valid cooperating agreement with Williams; such an agreement might also entitle Williams to claim a commission against Brown. The Louisiana Real Estate Commission has the authority to regulate and enforce the real estate license law. La.R.S. 37:1435 C(3). Under this authority the Commission has promulgated regulations that govern the association of, or cooperation between, a licensed Louisiana broker and a broker licensed only in another state. 3 La.Adm.Code 46:LXVII § 6301.[1] A proper association would entitle the licensed Louisiana broker to claim a commission from the seller and the nonresident broker to recover a portion from the Louisiana broker. La.R.S. 37:1446; Cook v. Matherne, 432 So.2d 1039 (La.App. 1st Cir.1983). Williams and Coleman attempted to prove they had an association that complied with the regulations.
The trial court carefully considered the record evidence in light of the regulations. Both Coleman and Williams testified they intended to cooperate to sell the property because it was required by law. Beyond this claim of intent, however, there was little evidence of compliance with the regulations. Williams did not directly supervise Coleman; in fact, Williams's involvement was that of a dormant partner. Their cooperating agreement was not reduced to writing or filed in duplicate with the Commission. Finally, their oral agreement gave Williams only 25% of the fee or commission (if, as anticipated, Coleman procured the buyer) instead of the mandatory 50%. Given these facts, the trial court was not plainly wrong to find that Coleman did not prove a valid cooperating agreement, as was required for Ray Coleman to assert a claim against Don Williams. As noted, compliance with the regulation also must be proved for Williams to assert a claim against Brown; obviously the same criteria governed this determination. The trial court was not clearly wrong in finding that Coleman and Williams did not meet their burden of proof and that Don Williams could not claim a real estate commission or fee from William Brown on the *737 basis of Coleman's conduct with Brown. This assignment lacks merit.

Constitutionality of Louisiana's laws
By their second assignment Williams and Coleman urge the trial court's interpretation of Louisiana's laws and regulations deprived them of the privileges and immunities guaranteed by the constitution. U.S. Const. art. IV § 2.
Brown filed this petition in June 1989. Although Coleman's intervention was not formally filed until March 6, 1990, Brown filed the exception of no cause of action on November 16, 1989. The exception specifically pleads the statutes on which the trial court based its judgment. There is no filing by either Williams or Coleman to challenge the state laws.
At the hearing on the exception, March 20, 1990, Brown continued to argue that the statutes barred Coleman's intervention. Williams and Coleman did not contest the statutes but argued they had complied with the regulations for associating an in-state realtor. The trial court commented that R.S. 37:1445 may possibly be unconstitutional, Tr. 32, but Williams and Coleman neither argued the point nor sought leave to amend their pleadings. The trial court sustained the exception and dismissed Coleman's intervention.
In this court's writ order of March 28 the panel commented that the unconstitutionality of R.S. 37:1445 "may be raised" on appeal of the final judgment. However, the parties proceeded to a two-day trial at which no one ever urged the trial court to consider the effect of any statute or regulations on the parties' privileges and immunities.
The constitutionality of a statute must first be questioned in the trial court, not the appellate court. Lemire v. New Orleans Pub. Serv. Inc., 458 So.2d 1308 (La.1984); State ex rel. McAvoy v. Louisiana State Bd. of Medical Examiners, 238 La. 502, 115 So.2d 833 (1959). A litigant who fails to plead unconstitutionality of a statute in the trial court generally cannot raise the issue on appeal. Johnson v. Welsh, 334 So.2d 395 (La.1976); Davis v. Franklin Parish Sch. Bd., 412 So.2d 1131 (La.App.2d Cir.), writ denied 415 So.2d 942 (1982). To challenge a statute as unconstitutional in suit for declaratory judgment requires the joinder of the attorney general. La.C.C.P. art. 1880.
Courts have repeatedly upheld Louisiana's statutory scheme for licensing realtors and associating out-of-state realtors. Zerlin v. Louisiana Real Estate Bd., 158 La. 111, 103 So. 528 (1925); Brumfield v. Brumfield, 450 So.2d 1019 (La.App. 1st Cir.1984); Horwitz v. Food Town Inc., 241 F.Supp. 1 (M.D.La.1965), aff'd 367 F.2d 584 (5th Cir.1966). A recent attorney general opinion advises that R.S. 37:1437 A's residency requirement and § 1437 E's reciprocity provisions (quoted above) are facially unconstitutional. Op.Atty.Gen. 90-450 (October 25, 1990, or four months after judgment in the instant case). This opinion does not discuss the administrative regulations mentioned in § 1437 E and holds that §§ 1445 and 1446 are constitutional.
Williams and Coleman never pleaded or argued their constitutional issue to the trial court and for this reason we will not now consider it. In brief they contend they were justified in not advancing the issue earlier because they did not expect the trial court to apply a strict construction of the statute and regulations. This claimed justification, however, is not persuasive. The plaintiff specifically pled the statutes four months before trial; and both the trial court and this court intimated that they would consider evidence and argument as to constitutionality if such were offered. No such evidence or argument was advanced. Williams and Coleman waived the issue in the trial court and we will not now take it up for the first time.
Furthermore, we find no compelling authority that the statutory and regulatory scheme is unconstitutional. No state or federal court has yet refused to apply it. The attorney general opinion is advisory only, and it does not appear to consider the entire scheme comprehensively enough to compel us to perform a de novo constitutional analysis. Even if a *738 trend in the law were shown to recommend such analysis, the appellants' claim that the statutes are "unconstitutional in their application" is largely a factual issue and better suited to resolution by a fact finder with adequate notice to the attorney general. La.C.C.P. art. 1880. In short, the case in its present posture does not justify the exercise of a de novo constitutional analysis by this court.
This assignment lacks merit.

Quantum meruit
By their third and fourth assignments Williams and Coleman urge the trial court was plainly wrong in failing to find an agreement between Coleman and Brown; and even if there was no agreement, Coleman is entitled to quantum meruit for his effort and expenses. See La.C.C. art. 1757.
The trial court aptly observed that most of the evidence adduced sought to prove or refute the existence of a contract between Coleman and Brown. We would add that most of this evidence was contradictory; the existence and substance of the alleged agreement was hotly contested.
Rather than rejecting Coleman's position that he had a contract to sell the land and receive a commission, the court's reasons decline to make a finding on the issue. The court held that Coleman's failure to have a Louisiana license, to prove reciprocity or to associate properly with Williams barred him from recovering any commission or fee. La.R.S. 37:1445 provided, prior to amendment in 1989:
§ 1445. Unlicensed or unregistered persons prohibited from recovering brokerage charges
No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Chapter.
Unlicensed or unregistered persons may not recover a real estate commission, fee, or compensation of any sort, regardless of the benefit they may have provided to the seller. Parr v. Asaff, 322 So.2d 313 (La.App.2d Cir.1975); Sellers v. Evans, 207 So.2d 841 (La.App.2d Cir.1968); Ponder v. Succession of Wall, 486 So.2d 209 (La.App. 1st Cir.1986). The unlicensed or unregistered broker may not even validly contract to perform the business of a real estate broker in Louisiana. La.R.S. 37:1436. The prohibition would defeat any claim of Coleman's, be it contractual or quasi contractual, for a commission arising out of these facts.
We would also note that quantum meruit is not a valid theory of recovery for a real estate commission; even if the broker proves an implied agreement, his recovery is on the contract. Woods Realty Inc. v. Brimberry Trust, 521 So.2d 810 (La. App.2d Cir.1988), and citations therein.
The trial court did not err in declining to find an agreement between Coleman and Brown, and in denying the claim based on quantum meruit.

Conclusion
For the reasons expressed, the judgment is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] A Louisiana broker may cooperate with a licensed broker of another state on the appraisal, sale or lease of real property within the limits provided in the Louisiana Real Estate License Law, and under the following conditions:

A. The appraisal, sale or lease of real property shall be handled under the direct supervision of a Louisiana broker who shall take full responsibility for all actions of the nonresident broker.
B. Both the Louisiana broker and the nonresident broker agree to sign the written reports and agreements and to comply with the Louisiana Real Estate Licensing Law and with the rules and regulations of the Louisiana Real Estate Commission.
C. In each instance herein where a Louisiana broker enters into a cooperating agreement with a nonresident broker for the appraisal, sale or lease of Louisiana real estate, the Louisiana broker must file two copies of the cooperating agreement with the Louisiana Real Estate Commission prior to the appraisal, sale or lease being made. A written cooperating agreement is required to be filed for each separate appraisal sale or lease.
D. Any fee or commission received under this rule wherein a licensed Louisiana broker cooperates with a licensed broker of another state, must be divided on a basis wherein the licensed Louisiana broker shall receive at least 50 percent thereof.