716 So.2d 523 (1998)
Jack Moore BAILEY, Sr., et al., Plaintiffs-Appellants,
v.
The PARISH OF CADDO, Defendants-Appellees.
No. 30822-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
Rehearing Denied September 17, 1998.
*525 Dannye W. Malone, Office of the Parish Attorney, Judi Milke, Assistant Parish Attorney, Wilkinson, Carmody & Gilliam by Mark E. Gilliam, Shreveport, for Defendants-Appellees.
Law Office of Jack M. Bailey, Jr. by Jack M. Bailey, Jr. and J. Allen Cooper, Jr., Shreveport, for Plaintiffs-Appellants.
Before NORRIS, BROWN and WILLIAMS, JJ.
NORRIS, Judge.
This is a zoning case. The plaintiff, Jack Bailey Sr., owns a residential lot next to one owned by the defendants, Catherine Reed, her parents, grandmother and aunt (collectively, "the Reeds"). Bailey appeals a judgment which affirmed the actions of the Metropolitan Planning Commission ("MPC") and the Caddo Parish Commission ("CPC") granting the Reeds' request to subdivide their lot. For the reasons expressed, we affirm.

*526 Factual background

Jack and Dorothy Bailey Sr. own Lot 11, Moss Point, a small subdivision with large lots on Cross Lake. Their next door neighbors, the Reeds, own Lot 10; a plain "camp house" had stood on Lot 10 for years. In 1993 the Catherine Reed and her husband moved an existing house onto Lot 10 and improved it.
The controversy began, according to Mr. Bailey, in August 1994 when the Reeds cut down a stand of bamboo and shrubbery that separated the lots, moved construction materials onto Lot 10, and apparently prepared to build there. Mr. Bailey testified that he asked some questions and learned that the Reeds planned to have three houses on the single lot. He was incensed that this could happen next to his retirement home. He also learned that the Reeds had obtained a zoning certificate to build a house. Bailey immediately complained to the MPC which, after some investigation, revoked the zoning certificate.
Mrs. Reed asked the MPC's executive director, Mr. Kirkland, why their certificate had been withdrawn. He explained that apart from tax assessor records, he could find nothing to indicate that the property was multiple lots on which two houses could be built. Mrs. Reed replied that the property had been in her family for nearly 50 years and, since her childhood, she always understood that it had been partitioned into a north half, which she had purchased and was using as her home, and a south half on which her parents intended to build. She added that since 1981 her family had paid taxes on two separate tracts; the assessor's office showed Lot 10 as resubdivided into Tracts 26 and 27, each consisting of slightly over one acre. Mr. Kirkland testified that at first it seemed that the Reeds intended to build a multi-family dwelling on the south half, but ultimately decided on one singlefamily house. They discussed the Reeds' options and he advised her to apply to the MPC for a formal resubdivision of Lot 10. She did so on August 30, in accord with Caddo Code of Ordinances, § 51-242(b).
The MPC examined the application, visited the site and prepared a Land Use Report which recommended granting the resubdivision.[1] A hearing was held on September 7, at which Mr. Bailey and his son, attorney Jack Bailey Jr., spoke in opposition to the request. The MPC unanimously approved the resubdivision; Bailey now contends this occurred in an illegal executive session.
Mr. Bailey appealed the MPC's decision to the CPC, in accord with Caddo Ord. § 51-50. The matter was noticed in The Times; the CPC took it up at a work session on October 24 and at its regular meeting on October 27. At this meeting Mr. Bailey again spoke against the application, but Mr. Kirkland spoke in its favor. He defended the MPC's decision on the basis that of the original 13 lots in Moss Point Subdivision, seven had already been subdivided in one manner or another; he also stated that customarily people have come to rely on assessor's actions as a legal basis for building. The CPC approved the MPC's action by a vote of 8-1.[2]
Mr. Bailey filed the instant suit in November 1994. He named as defendants the CPC, MPC, and the Reeds. He prayed for sundry relief: (1) an order declaring Lot 10 rezoned back into one lot; (2) removal of all but one single-family residence from Lot 10; (3) damages for diminution of the value of Lot 11; (4) attorney fees and costs; (5) civil rights damages for the commission of unconstitutional acts, under 42 U.S.C. § 1983; and (6) general and equitable relief. After long and contentious discovery, and numerous pretrial motions, trial was held in February 1997.
The trial testimony was essentially that outlined above. Mrs. Reed testified that in 1981 her grandmother and great aunt saw a lawyer about having Lot 10 formally partitioned; they executed an act of partition and prepared a plat which were filed in the conveyance *527 records in January 1981, but they never pursued formal resubdivision with the MPC. Nevertheless the assessor had treated the tract as two lots since 1981. Mrs. Reed obtained two building permits and Hibernia National Bank had approved her prior construction loan, so she assumed the lot was properly subdivided. She admitted that Mr. Kirkland of the MPC had suggested she apply for resubdivision, but denied that she "conspired" with commission members to approve her request.
Mr. Bailey testified that his own house actually stood on a resubdivided one-acre lot.[3] Some years earlier, his brother had attempted to resubdivide this partial lot into two half-acre lots (thus creating three lots from the original two-acre tract), but someone from the MPC told him it was not possible.
Several other lots in Moss Point were also split or subdivided, although some of these occurred before the Caddo zoning ordinances took effect in 1958. Finally, there was much digressive, hearsay testimony about other residents' requests for resubdivision between 1981 and the present.
By written ruling, the District Court referred to Mr. Bailey's petition as a "smorgasbord of complaints" but found no evidence to support them. It specifically rejected the arguments that the MPC and CPC were arbitrary and capricious in granting the Reeds' application and that the ordinances were unconstitutional. The court further noted that over one-third of the original lots were resubdivided, including Mr. Bailey's, so granting the Reeds' request was "consistent and compatible with the history and character of the neighborhood." The court also rejected the civil rights claims. Finally the court took under advisement whether the Baileys had properly pled and proved damages for "trespass and taking," viz. removing the bamboo fence. The court gave Mr. Bailey until June 10 to brief the issue, but he filed no brief. The court therefore concluded that the issue was not properly pled, and there was no evidence to support it. Judgment was rendered rejecting all of Mr. Bailey's claims.
Mr. Bailey has appealed, advancing 23 assignments of error.

Applicable law
Zoning regulation flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. La. Const. Art. 6 § 17; Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982), and citations therein. A prima facie presumption of validity attaches to a zoning body's actions. The reviewing court cannot substitute its own judgment, absent a showing that the Board was arbitrary and capricious or abused its discretion. Papa v. City of Shreveport, 27,045 (La.App. 2 Cir. 9/29/95), 661 So.2d 1100, writ denied 95-2544 (La.1/5/96), 666 So.2d 295, and citations therein. The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. Clark v. City of Shreveport, 26,638 (La.App. 2 Cir. 5/10/95), 655 So.2d 617, and citations therein. When applications are granted in similar situations and refused in others, the refusal to grant one may constitute nonuniform application of zoning ordinances that is arbitrary and capricious. Id.
Judicial review of a zoning board action is de novo. Papa v. City of Shreveport, supra. Nevertheless, when the propriety of a zoning decision is debatable, it will be upheld. Palermo Land Co. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482 (La.1990); Papa v. City of Shreveport, supra.
Claims of unconstitutionality are regulated by La. C.C.P. art. 1880: "If the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and entitled to be heard." Without such prayer and service on the Attorney General, the issue is not properly raised. Brown v. Williams, 587 So.2d 732 (La.App. 2 Cir.1991), and citations therein.
Resubdivision of the lot involved in this case is regulated by Caddo Ord. § 51-242(b):

*528 (1) In substantially developed neighborhoods which contain building sites in excess of the minimum standards for R-1D districts [7,200 square feet], resubdivision so as to create smaller building sites constitute[s] a change in the character of such neighborhoods.
(2) Where a subdivided lot of record exceeds the minimum building site area, resubdivision of that lot shall be permitted only when each proposed resubdivided lot is not less than the average of surrounding contiguous residential building sites, in the same subdivision filing, including the existing open spaces, yards, and off-street parking facilities in conjunction therewith. Contiguous sites shall include those directly across any residential service streets. Waiver of this restriction may be granted by the [MPC] through the subdivision process only upon a specific finding of good cause therefor, provided such relief may be granted only if there will not be substantial detriment to the public good or substantial impairment to the intent and purpose of this chapter, and further provided that economic hardship alone shall not constitute good cause.
Appeal from a decision of the MPC is taken to the CPC, which may either affirm, modify, remand or reverse the MPC's action. Appeal from the CPC's decision is taken to "a court of appropriate jurisdiction." Caddo Ord. § 51-50.

Discussion: Improper basis for resubdivision
By assignments Nos. 10, 11 and 12, Mr. Bailey urges the District Court erred in failing to find that the MPC and CPC utilized improper factors to grant the Reeds' resubdivision application. First he contends that "clarification of the public records" cannot be a valid reason to grant the application, because there in nothing in the ordinance or law to justify anyone's reliance on assessor records that conflict with the official conveyance records. Next he urges that granting the Reeds' application would indeed "change the character of the neighborhood," on grounds that if every lot could be subdivided to one-acre size, the neighborhood is changed. Third he asserts that the Reeds' economic hardshipthey had invested over $100,000 to relocate and renovate the old house, and incurred construction delays on the new onecould not justify granting their application because such hardship was completely self-induced. In support he cites Sanchez v. Board of Zoning Adjustments, 488 So.2d 1277 (La.App. 4 Cir.), writ denied 491 So.2d 24 (1986), cert. denied sub nom. Montgomery v. Board of Zoning Adjustments, 479 U.S. 963, 107 S.Ct. 461, 93 L.Ed.2d 406 (1986).
At the outset we note that under Caddo Ord. § 51-242(b)(2), economic hardship alone does not constitute good cause for granting an application for resubdivision. The ordinance plainly contemplates that if other valid factors are present, economic hardship may be considered. The instant record is abundantly clear that the MPC initially, and the CPC upon review, discussed other factors in addition to economic hardship. Mr. Kirkland testified that his recommendation to the MPC was based on lot values, the size of adjacent building sites, and what might be detrimental to the subdivision. Given the breadth of § 51-242, we find the MPC and CPC were entitled to consider all relevant factors.
The District Court found that over onethird of the original lots in Moss Point were already subdivided into one-acre lots. Ironically, Mr. Bailey owns one of these smaller, one-acre lots. The photos in evidence show that the house moved onto the north portion of Lot 11 in 1993 is compatible with other houses in the area; the new construction will incorporate and upgrade an older camp house which, according to Mr. Bailey, is "unattractive." In view of these facts, the MPC and CPC did not abuse their discretion in finding that subdividing Lot 11 would not effect a "change in the character" of Moss Point.
The remaining argument is that the MPC could not "clarify the record" by granting the application because, according to Mr. Bailey, there was no "public record" of a resubdivision of Lot 10 prior to 1993. Ordinarily, disputes between competing purchasers of the same property are regulated by the public records doctrine, under which *529 third persons are entitled to rely on written instruments "filed for registry in the parish where the property is located." La. C.C. art. 1839. In fact, where third parties are involved, tax assessor records do not defeat official conveyance records. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910).
Mr. Bailey has not shown, however, that the public records doctrine is an issue in this case. Specifically, the Reeds' partition of Lot 10 does not impair his proprietary interest in Lot 11. Mrs. Reed and Mrs. Abbott both testified that their family considered the property to consist of two lots; conveyance and assessor records supported this. On the totality of the facts presented, the MPC and CPC were entitled to conform the zoning regulations to the understanding of the owners and to the conveyance and assessor records. We perceive no abuse of discretion. These assignments of error lack merit.

Arbitrary and capricious resubdivision
By assignments Nos. 16, 17 and 18, Mr. Bailey urges the District Court erred in failing to find that the MPC and CPC were arbitrary and capricious in granting the Reeds' application. Specifically he contends that the Reeds committed fraud by giving false information to the MPC's executive director, Mr. Kirkland, who continued the fraud by relaying it to the MPC; thus the decisions reached by the MPC and CPC were arbitrary and capricious. Mr. Bailey also contends that because the MPC previously rejected his own inquiry to further subdivide Lot 11, as well as a Mr. Futrell's application to subdivide another lot, the decision to grant the Reeds' application was prima facie arbitrary.
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art.1953; Ballard's Inc. v. North Amer. Land Development Corp., 28,437 (La.App. 2 Cir. 6/26/96), 677 So.2d 648. The record may support Mr. Bailey's contention that the Reeds initially considered placing a multi-family dwelling on the south half of Lot 10, and that Mr. Kirkland suggested they should apply to subdivide the lot for two single-family dwellings. R.pp. 1013-1014. Mr. Kirkland apparently advised them which course of action was more promising; however, the record does not show any misrepresentation. Their application for a building certificate, granted on July 25, 1994, and their subsequent application for resubdivision, both stated the purpose of placing another single-family dwelling on the lot. There is no proof that they submitted false information of any significant nature to the MPC.
As for the unequal treatment of applications, the record supports Mr. Bailey's assertion that the MPC rejected a resubdivision request from a Mr. Futrell in 1984, and that someone at the MPC told Mr. Bailey that his lot could not be further subdivided. Two other applications, lodged in 1982, apparently were granted without notice having been mailed to the neighbors, while the Reeds' request was granted after full notice and hearings. Of course, the granting and denial of permits in similar situations may be arbitrary and capricious conduct. Clark v. City of Shreveport, supra. The record suggests, however, that Mr. Futrell had requested "multiple building sites," three to six in number, R.p. 1054, or to place a mobile home on the property, R.p. 1072; either of these proposals could have been inconsistent with the existing neighborhood. As for Mr. Bailey's own inquiry, a further subdivision of his already-subdivided lot would obviously have created two "smaller building sites" in violation of Caddo Ord. § 51-242(b)(1). In short, the District Court was entitled to find that the prior denials did not involve similar situations. As for the prior grants of resubdivision, Mr. Kirkland testified that mail-out notices are not required, only done as a courtesy. R.p. 1044. Mr. Bailey does not dispute this.
The fundamental question is whether the decision to grant the Reeds' resubdivision request was arbitrary and capricious. The District Court found it was not, and on the record presented we cannot declare this plainly wrong. Even if the MPC and CPC actions were debatable, we would not disturb them. Papa v. City of Shreveport, supra. *530 No such showing has been made; these assignments lack merit.

Unconstitutionality
By assignments Nos. 3 through 9 Mr. Bailey urges that Caddo Ord. § 51-242 is unconstitutional both on its face and as applied. The facial claim is based on alleged vagueness and failure to define "good cause," "substantial detriment," "substantial impairment" and "economic hardship." The as-applied claim contests the discretion exercised by MPC and CPC members in granting the Reeds' application. Specifically Mr. Bailey urges that § 51-242 is flawed because it contains general statements and "platitudes" that were rejected by the Supreme Court in Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982), and Gaudet v. Economical Super Market Inc., 237 La. 1082, 112 So.2d 720 (1959).
When a statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General must be served with a copy of the proceeding and entitled to be heard. La. C.C.P. art. 1880; Brown v. Williams, supra. Although Mr. Bailey specifically pleaded the issue, ¶¶ LVIII-LXII, he did not comply with art. 1880. Normally the failure to serve the Attorney General and allow his or her input forecloses further discussion of the issue. Brown v. Williams, supra.
Out of abundant caution we would observe that zoning ordinances, like other legislative acts, bear a presumption of validity. Morton v. Jefferson Parish Council, supra; Furr v. Mayor & City Council of Baker, 408 So.2d 248 (La.1981); Schafer v. City of New Orleans, 743 F.2d 1086 (5 Cir.1984). An ordinance fails if it contains no standard for the uniform exercise of power to grant or deny permits and thus fails to notify citizens of their rights pursuant to ordinance. Morton v. Jefferson Parish Council, supra; Summerell v. Phillips, 282 So.2d 450 (La. 1973). In Morton, supra, the contested ordinance permitted a nursery school in an R-1 district:
[W]hen approved by an ordinance by the Jefferson Parish Council, when the Council is satisfied that granting approval will not seriously affect any adjoining property or the general welfare.
In Gaudet v. Economical Super Market, Inc., the ordinance allowing parking facilities on residentially zoned property contained similar language and no more; in Summerell v. Phillips, supra, the ordinance contained absolutely no standards for the creations of mobile home parks.
By contrast, a cursory reading of Caddo Ord. § 51-242(b) shows the inclusion of objective standards completely omitted in Gaudet, Morton and Summerell: (1) a definition of "change in the character" of the neighborhood; (2) minimum building site requirement; (3) definition of contiguous building sites; and (4) limitation of economic hardship as a basis for resubdivision. The inclusion of these criteria plainly differentiates the instant ordinance from the unconstitutional ones in Morton, Gaudet and Summerell.
Finally, there is simply no deficiency for the failure to define "good cause." Good cause is a "relative and highly abstract term," and its meaning is fixed by the verbal context as well as the "actions and procedures involved." Wray v. Folsom, 166 F.Supp. 390 (W.D.Ark.1958). It is frequently invoked and seldom defined.[4] Zoning ordinances by nature contemplate the exercise of discretion. Papa v. City of Shreveport, supra. Mr. Bailey has failed to show any improper delegation or exercise of discretion in the MPC's ordinance. These assignments lack merit.

Open Meetings Law
By assignment No. 22 Mr. Bailey urges the MPC's final vote on the Reeds' application should be voided because it was taken in "executive session," in violation of the Louisiana Open Meetings Law, R.S. 42:6. In support he cites a transcript of the September 7, 1994 MPC meeting,[5] prepared by Cynthia N. *531 White, allegedly showing that the MPC took its final vote on the Reeds' application after the public meeting.
The Open Meetings Law was enacted to allow the public to observe and evaluate public officials, public conduct, and public institutions. Daigre v. Terrebonne Ass'n for Retarded Citizens, 543 So.2d 1108 (La.App. 1 Cir.), aff'd 548 So.2d 333 (1989). It is meant to protect citizens from "secret decisions made without any opportunity for public input." Delta Development Co. v. Plaquemines Parish Comm'n Council, 451 So.2d 134 (La.App. 4 Cir.), writ denied 456 So.2d 172 (1984).
We have closely examined the "transcript" on which Mr. Bailey's argument is grounded. We find, however, that Mrs. White's version of the MPC chairman's introductory remarks is incomplete[6] and conflicts with the official transcript by Jerry R. Mullins CSR, Certified Court Reporter (Ex. J-3). Public bodies may meet in different locations as long as proper notice is given and all meetings are open to the public. La. Atty. Gen. Op. No. 88-162. The official transcript shows that although the final vote was taken in another room, it was with adequate notice and open to the public. The chairman's complete introductory remarks included the following:
After all the cases have been heard this afternoon, the Commission will retire to the conference room at 322 for deliberation and vote on each case. If you wish to join us, you are welcome to do so. All applicants will be notified by letter of the decision. You may request a decision and information on a particular case by contacting the MPC office after 12 noon tomorrow. All our decision are subject to appeal to the appropriate governing body, either the City Council or the Public Commission, depending on the location of the property in question. (Emphasis added)
Mrs. White's version also has a notation for where the tape was changed, as well as a heading, "Deliberations," in which the actual vote was taken. Mr. Bailey contends this was obviously an executive session from which he was excluded; however, his argument is not supported by the official transcript or the minutes (Ex. J-1, Attachment No. 3, page 9). In fact, Mr. Bailey testified that he and his attorney were present at the MPC hearing. R.p. 1084. He never contended, by petition or testimony, that he was excluded from the vote.
In short, the record shows no Open Meetings Law violation. This assignment lacks merit.

Admission of sewer application
By assignment No. 13 Mr. Bailey urges the District Court erred in failing to admit into evidence a letter signed by Mr. Abbott; this would allegedly impeach Mrs. Reed and her mother, Mrs. Abbott. The "letter" is actually an application to install an individual sewerage system (specifically, a sprinkler system), dated November 3, 1994 and signed by J.F. Abbott; Mrs. Reed confirmed that the signature appeared to be her father's. The paper has a check mark by "Single Family Residence," but also bears the written note, "4 people, 5 bedrooms." According to Mr. Bailey, this paper would impeach Mrs. Reed's testimony that only her parents, the Abbotts, would be living in the new house. Mr. Bailey also suggests that it would support his contention that the Reeds originally wanted to place two houses on the south half of Lot 10.
*532 Although the court's ruling is not clear from the record, all sides concede that the application was not admitted.[7] Mr. Bailey contends it was admissible on several grounds: La. C.E. art. 607 C and D, permitting intrinsic and extrinsic attacks on credibility; art. 801 D(2) and (3),[8] defining prior statements of witnesses, and their authorized admissions, as not hearsay; art. 803(8) and (15), creating hearsay exceptions for public records and reports, as well as documentary statements affecting interest in property; and art. 901 B(2) and (7), making nonexpert opinion admissible to show that handwriting is genuine, and treating public records or reports as normally genuine.
Mr. Bailey's argument has some merit. The District Court correctly ruled that he was entitled to impeach Mrs. Reed's assertion that her parents never intended for more than two people to live in the new house, art. 607 D. Further, with her admission that the signature was genuine, art. 901 B(2), there was no contention that the application was fraudulent or had been altered.
Even if we assume, however, that the application was admissible, there is no basis for reversing the judgment. Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the party is affected. La. C.E. art. 103 A; Succession of Brewster, 27,463 (La.App. 2 Cir. 11/1/95), 663 So.2d 551, writ denied 95-3118 (La.2/16/96), 667 So.2d 1059; Brumfield v. Guilmino, 93 0366 (La.App. 1 Cir. 3/11/94), 633 So.2d 903, writ denied 94-0806 (La.5/6/94), 637 So.2d 1056.
Mrs. Reed's assertion that they always intended only two people to live in the new house was contradicted by Mr. Kirkland, who testified that early in their discussions the Abbotts may have mentioned a multi-family residence, and by Mr. Bailey himself, who testified that "Mrs. Roby" (presumably Mrs. Aubrey) told him they would have "three families in three houses." In short, other evidence was presented to impeach Mrs. Reed's assertion. The failure to admit Mr. Abbott's applicationwhich is equivocal at besthad no demonstrable bearing on the outcome. Even if all the impeachment evidence is taken as true, it shows only that at one time the Reeds considered other options. This assignment lacks merit.

Damages for cut bamboo
By assignment No. 23, Mr. Bailey urges the District Court erred in refusing to award damages for "at least the replacement cost" of bamboo plants that the Reeds cleared off the property line. He argues that to maintain his privacy he installed a new fence at a cost of "approximately $8,800.00."
As noted, the District Court took under advisement whether Mr. Bailey sufficiently alleged[9] and proved economic damages for loss of his bamboo. When Mr. Bailey failed to file a brief as requested, the court rejected the claim as neither pleaded nor proved.
A cursory review of the record shows no basis for these damages. Mr. Bailey testified that the bamboo removed by the Reeds was mostly on their own side; on Bailey's side, "there wasn't a great deal, * * * only a foot or two." R.p. 1078. He offered not one scintilla of evidence as to the value of the naturally-growing bamboo; this is fatal to the claim. Ott v. Fornea, 224 La. 36, 68 So.2d 749 (1953); Evans v. B.R. Bedsole Timber Contractors, 521 So.2d 837 (La.App. 2 Cir.1988). This assignment lacks merit.

Other arguments
Mr. Bailey's remaining assignments of error present minor or frivolous questions and may be disposed of summarily.
Attorney fees (Assignment No. 21). Mr. Bailey has prayed for attorney fees, in the trial court and on appeal, on grounds of fraud, La. C.C. art.1958, and civil rights violations, 42 U.S.C. § 1988. Insofar as neither *533 court has found fraud or civil rights violations, denial of attorney fees is appropriate.
Zoning Board of Appeal procedure (Assignments Nos. 1 & 2). Mr. Bailey contends that the MPC and CPC violated Caddo Ord. § 51-46(f)(4) and R.S. 33:140.32 E(3), parallel provisions which regulate the Zoning Board of Appeals and limit its power to grant variances from zoning ordinances. The instant case, however, began in the MPC and was reviewed by the CPC, as required by Caddo Ord. § 51-50. As Mr. Bailey took no action before the ZBA, the special statutes do not apply.
Classification of Moss Point (Assignments Nos. 14 & 15). Mr. Bailey contests the classification of Moss Point as R-1D on grounds that there are no standards or definitions explaining the classification. He did not, however, raise this issue in petition or at trial; the District Court did not address it; we decline to consider it for the first time on appeal. In addition, the creation of districts is clearly defined and self-explanatory. See Caddo Ord. § 51-126.
Minor modification standard (Assignment No. 19). Mr. Bailey urges the District Court erred in failing to find that the MPC and CPC violated the standard for a "minor modification," Caddo Ord. § 51-1. Like the preceding issue, this point was neither raised by petition nor addressed at trial. The District Court did not address it; as it bears no rational relation to the case, we find the assignment utterly devoid of merit.
Sewerage system violation (Assignment No. 20). Mr. Bailey contests the District Court's failure to find that the Reeds installed a sewerage system within 100 feet of Cross Lake, in violation of Caddo Ord. § 20-21. Like the preceding issues, this one was not pleaded or addressed at trial. It is utterly devoid of merit.

Conclusion
For the reasons expressed, the judgment of the District Court is affirmed at the appellants' cost.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN, WILLIAMS and STEWART, JJ.
Rehearing denied.
NOTES
[1] The report states: "Approval of the plat would clarify the public record. Given the number of resubdivided or split-ownership lots there is probably good cause to waive the `average size' provision."
[2] Three commissioners were absent.
[3] It is described in the deed as a "parcel of land off the Northerly side of lot 11[.]"
[4] Our review shows at least 34 Louisiana statutes which use the term "good cause"; only four attempt to define it, and all of these are nonexclusive. See La. R.S. 28:392 B; R.S. 42:1157.2; R.S. 46:236.3 B(2)(b); R.S. 47:463.4 B(3).
[5] At oral argument counsel contended generally that both meetings of the CPC were also in violation of the Open Meetings Law, but his brief addresses only the alleged "executive session" of the MPC on September 7.
[6] Mrs. White's transcript contains only the following:

"MR. SCHUFORD: This is our regular [sic] scheduled public hearing for the Shreveport Metropolitan Planning Commission. We have slips to the table to my right and if you wish to speak for or against on [sic] on application please fill one out, bring them to the table before speaking and place them in the box at the speaker's stand. Please, state your full name, your mailing address, including your ZIP code before you address the commission. It is very important that you speak clearly into the microphone so that your comments can be accurately recorded and transcribed. We will call each case in theon the agenda in numerical order and hear first from the applicant and those speaking for an application.
"(Explanation of the procedures explained.)"
[7] The court specifically declined to say whether it was admissible. R.pp. 1142-1143.
[8] Mr. Bailey also cites La. C.E. art. 801(6), which does not exist.
[9] The petition, ¶ LXV, prayed for "economic damage to their lot and market value of their lot as may appear reasonable in the premises," "deliberate or wilful injury to plaintiffs causing economic damage as may appear reasonable in the premises," and "illegal taking of the plaintiffs' property and violation of their rights as may appear reasonable in the premises." R.p. 18.