STEPHENS, J.
Barry Barton appeals a judgment by the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, *678 granting an exception of no right of action filed by William R. Long. For the following reasons, we affirm the trial court's judgment.
FACTS AND PROCEDURAL HISTORY
Barry Barton and William R. Long are the only members of BCL Investments, L.L.C. ("BCL"), a Louisiana limited liability company-each having a 50% ownership interest and equal voting rights. BCL's sole business is the ownership and development of a commercial use "strip" shopping center in Bossier City, Louisiana, known as "Park Place Plaza" (the "property").[1]
The Petition and Answer
Long filed a petition seeking the judicial dissolution of BCL on August 30, 2017, wherein he claimed that "[t]he current members have reached an impasse as to the objectives, purposes and future of BCL and it is not reasonably practical to carry on the business of BCL [.]" According to his petition, in May 2016, Barton approached Long with information regarding a potential buyer for the property; Long was interested, but the prospect backed out. Long alleged that afterwards, due to disagreements over the management of the property, he and Barton attempted to sell the property, but that was unsuccessful. Additionally, Long asserted that the parties attempted a resolution where one member would buy the other out of BCL-to no avail. Long made other allegations which he claimed indicated Barton's breach of the fiduciary duty owed to him and the LLC. Thus, Long requested the dissolution of BCL and an appointment of a liquidator.
Barton answered the petition, denying most of the allegations, but admitting that: disagreements between him and Long over the management of BCL existed; efforts had been made to sell the property; and, BCL should be dissolved and a liquidator should be appointed.
The parties entered into a consent order on October 25, 2017, naming Richard Ray as liquidator in the matter.
Barton's Rule to Show Cause
Shortly after the appointment of Ray as liquidator, Barton filed a rule to show cause regarding payment of compensation prior to the distribution of assets. In Barton's rule to show cause, it was claimed that he and Long were negotiating terms for the buyout of their respective interests in BCL. Barton alleged in his pleading that Long, an attorney, agreed to provide legal services to BCL without charge, and Barton, a CPA, agreed to provide accounting services without charge-all in furtherance of BCL's objectives. Barton alleged that BCL procured the services of a local real estate firm, Lea Hall Properties, to handle the leasing of the property. As claimed by Barton, the agreement with Lea Hall Properties provided for BCL to pay commission "up front" upon execution of any lease-6% of the entire lease revenues for the entire term of the lease. Barton characterized this agreement with the real estate firm as a financial burden to BCL, especially in the early phase of the business.
Therefore, Barton alleged he and Long made an oral agreement that for any tenant Barton secured for the property, the "up front" commission would be avoided, and any right Barton had to "compensation" for the lease of the property would be deferred until BCL sold the property. Barton claimed to have secured several tenants, and attached to his pleading sample pages from the leases. Apparently, in *679 the initial leases, Long referred to "commissions" payable to Lea Hall Properties, but in subsequent leases, Long referred to "commissions" as to Barton. However, in those leases, Long stated "all such commissions waived as Barry Barton is also one of the Landlords at this time." Barton alleged that he questioned why Long used the word "waived" instead of "deferred," and claimed Long explained that was the legally proper language.
In the rule to show cause, Barton set forth several tenants he allegedly secured, the dates of their leases, monthly base rent, terms of the leases, and the compensation he claimed was due him. The grand total he claimed to be due as a result of securing tenants for the property on behalf of BCL was $55,613.47.
Peremptory Exception of No Right of Action And Opposition to Rule to Show Cause
In response to Barton's filing, Long filed his peremptory exception of no right of action and opposition to rule to show cause. Therein, he referenced Barton's allegation that he and Long had an oral agreement whereby BCL would in effect pay Barton a real estate commission for any tenants he secured for the property. Generally, Long's exception contended that Barton is statutorily prohibited from recovering a commission for the rentals of the property because he lacks a valid real estate license. Specifically, Long argued that "the recruiting and securing of tenants with the expectation of collecting a fee, commission, or other valuable consideration is 'real estate activity' as defined and governed by" La. R.S. 37:1430, et seq . Citing La. R.S. 37:1436 as authority, Long submitted that a person cannot recover a fee or commission unless he has a license from the Louisiana Real Estate Commission. Considering the statutory law, Long argued that Barton has never possessed a real estate salesperson or broker's license. Furthermore, Long contended that Barton did not allege he was a real estate salesperson or broker, thus he cannot bring suit for the recovery of a real estate commission. Finally, Long maintained that any contract for the alleged recovery of a real estate commission would be a violation of a rule of public order and an absolutely nullity.
Action by Trial Court
A hearing was conducted where both Barton's and Long's filings were considered. At the conclusion of the matter, Judge Charles Jacobs sustained Long's exception and certified the ruling a final judgment for appeal purposes. However, when the prepared judgment was submitted, it was signed by another judge at the trial court, Judge Parker Self. That judgment was appealed timely by Barton. Long answered the appeal, stating the appeal did not raise "a serious legal issue" and he was entitled to damages for frivolous appeal.
However, on July 20, 2018, this court entered an order observing that the trial court judgment had been signed by Judge Self, who was not the presiding judge over the matter, a violation of La. C.C.P. art 1911. Barton was given 30 days to present a valid judgment signed by the proper presiding judge-Judge Jacobs. Ultimately, the initial judgment was vacated by the trial court. A subsequent judgment was signed by Judge Jacobs which sustained Long's exception of no right of action, dismissed Barton's rule to show cause, and certified the judgment of partial dismissal a final judgment. This appeal then ensued.
DISCUSSION
Although this matter appears complicated on the surface, we need not dig too deeply to conclude it involves a plain and straightforward issue and the application *680 of indisputable statutory law. Here, the one legal issue to be determined is whether the trial court erred as a matter of law in finding that the Louisiana Real Estate Licensing Law, La. R.S. 37:1430 et seq . ("real estate law") applies to the member of a limited liability company leasing that property owned by the company. Additionally and more specifically, can an individual member of an LLC charge that entity a real estate commission if that member is not a licensed real estate broker/agent? The appellant, Barton, concedes that Louisiana's real estate law prohibits unlicensed individuals from receiving real estate commissions, and he is not a broker or agent. However, Barton argues that La. R.S. 37:1438 provides an exemption which allows him-a member/manager of BCL, owner of the property-to act on behalf of BCL and receive a commission for leasing the property. We disagree.
Principles of Law
The purpose of the exception of no right of action is to determine whether a plaintiff has a real and actual interest in an action or belongs to a particular class to which the law grants a remedy for a particular harm alleged. Schexnayder v. Gish , 41,819 (La. App. 2 Cir. 2/7/07), 948 So.2d 1259, 1262-63. The exception of no right of action is directed to showing that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927 ; Schexnayder, supra . The exception of no right of action presents a question of law; therefore, a court conducts a de novo review of the trial court's action on these exceptions. Washington v. Magnolia Manor Nursing Home & Rehab. , L.L.C., 51,899 (La. App. 2 Cir. 3/28/18), 247 So.3d 156, 159, writs denied , 2018-0682, 2018-0666, 2018-0685 (La. 8/31/18), 251 So.3d 413, 414.
A contract is absolutely null when it violates a rule of public order. La. C.C. art. 2030. "No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction." Trentman Co. v. Brown , 176 La. 854, 860, 147 So. 14, 16 (1932) (Citation omitted).
Louisiana's real estate law is contained in La. R.S. 37:1430, et seq. Louisiana R.S. 37:1436(B) provides:
It shall be unlawful for any person, partnership, limited liability company, association, or corporation, foreign or domestic, whether pursuant to a power of attorney or otherwise, for a fee, commission, or other valuable consideration , or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, commission or other valuable consideration, to engage in any real estate activity relating to any portion of a real estate transaction performed for another, unless exempted, as specified herein. (Emphasis added).
"Real estate activity" is defined in La. R. S. 37:1431(24), in pertinent part, as:
[A]ny activity relating to any portion of a real estate transaction performed for another by any person, partnership, limited liability company, association, or corporation, foreign or domestic, whether pursuant to a power of attorney or otherwise, who for a fee, commission, or other valuable consideration or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:
(a) Sells, exchanges, purchases, manages, rents, or leases or negotiates the sale, exchange, purchase, rental, or leasing of real estate.
*681 (b) Offers or attempts or agrees to negotiate the sale, exchange, purchase, management, rental, or leasing of real estate.
(c) Lists or offers or attempts or agrees to list for sale or lease any real estate or the improvement thereon.
....
(e) Advertises or holds himself, itself, or themselves out as engaged in the business of selling, exchanging, purchasing, managing, renting, or leasing real estate.
(f) Assists or directs in the procuring of prospects or the negotiation or closing of any transaction, other than mortgage financing, which results or is calculated to result in the sale, exchange, managing, leasing, or renting of any real estate, other than a provider of information, ideas, and materials to guide homeowners in the sale of their own property.
(g) Is engaged in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale, exchange, purchase, rental, or leasing of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both ....
Louisiana R.S. 37:1445 provides:
No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provision of this Chapter to other licensed brokers or licensed salespersons unless such person was duly licensed under this Chapter as a broker or salesperson prior to the time of offering to perform any such act or service or procuring any promise to contract for the payment of compensation for any such contemplated act of service.
Finally, La. R.S. 37:1438 provides exemptions to these prohibitions and states in pertinent part:
A. The provisions of this Chapter shall not apply to:
(1) Any unlicensed person, partnership, limited liability company, association, or corporation, foreign or domestic, provided that the following requirements are met:
(a) The unlicensed person, partnership, limited liability company, association, or corporation, foreign or domestic, is the owner or lessor of the property.
(b) The unlicensed person, partnership, limited liability company, association, or corporation, foreign or domestic, performs acts of ownership regarding the property, either individually or through an employee or representative [.]
Analysis
Initially, we note that the starting point in the interpretation of any statute is the language of the statute itself. M.J. Farms, Ltd. v. Exxon Mobil Corp ., 2007-2371 (La. 7/1/08), 998 So.2d 16, 27"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9.
Here, Louisiana's real estate law could not be more "clear and unambiguous": unlicensed individuals are prohibited from charging commissions for conducting real estate activity. Characterized as "strong and explicit" by the first circuit in Torbert Land Co., L.L.C. v. Montgomery , 2009-1955 (La. App. 1 Cir. 7/9/10), 42 So.3d 1132, 1135, writ denied , 2010-2009 (La. 12/17/10), 51 So.3d 16, our real estate law *682 prohibits the charging of a fee or commission by an unlicensed person performing real estate activity. La. R.S. 37:1436. In fact, so strong is the statutory mandate, a violation of the statute is a misdemeanor crime. La. R.S. 37:1436(E).
Barton argues that the payments were not a "real estate commission," but in fact "a contingent payment ... for savings achieved by avoiding the payment of a real estate commission." However, a rose by any other name would smell as sweet, and this payment sought by Barton smells like a commission for performing a real estate activity, regardless what the parties might have named it. Notably, the excerpts of leases in the record referred to the payments as "commissions." Barton concedes he is not a licensed real estate agent. Accordingly, any agreement the parties had to compensate Barton for conducting real estate activity (however that payment was characterized) is an illegal contract and absolutely null. See La. C.C. art. 2030. Thus, Barton had no right of action to demand payment for real estate commissions he was legally unentitled to, and the trial court did not err in dismissing his claims.
Nor do we agree that Barton is entitled to an exemption under La. R.S. 37:1438. The basis for Barton's contention is that he is entitled to the statutory exemption because he was acting as an owner of the property. But was he an owner? It is a fundamental precept that individuals with ownership interests in a limited liability company do not own the real property or the assets of the LLC-the LLC owns these assets. See La. R.S. 12:1329 ; Schauf v. Schauf , 51,919 (La. App. 2 Cir. 4/25/18), 247 So.3d 172, 177. Real estate activity by BCL (through Barton, its member/manager) was allowable because under La. R.S. 37:1438"the unlicensed ... limited company" could engage in real estate activity involved in leasing property it owned. Thus, the exemption provided by the statute belonged to BCL (acting through its member/manager), not Barton.
Additionally, Barton's claim for payment is not actually as an owner of the property if we consider Barton's role in the series of events: Barton the individual or Barton the member/manager acting on behalf of BCL, owner of the property. Significantly, at the point in time when BCL stopped using the services of Lea Hall Properties, and Barton acted to secure tenants for the property, he was acting as Barton, the member/manager of BCL, owner of the property. That activity benefited BCL, and Barton in his representative capacity could legally engage in real estate activity on behalf of the property owner, BCL. However, when Barton sought commissions (payments or compensation-whatever they were called) for the lease of the property, he was seeking to derive those commissions for himself, the individual, and not as the representative of BCL, owner of the property. There is no benefit to BCL, only Barton. Clearly, Barton is not acting as "owner" of the property when he, individually, seeks a commission for the leasing of BCL's property; thus he is in no way entitled to any exemption under the statute.
Finally, Barton argues that even if the agreement for commissions is unenforceable, he is entitled to recover under equitable principles including unjust enrichment and/or promissory estoppel. One enriched without cause at the expense of another is bound to compensate that person. La. C.C. art. 2298. A claim of unjust enrichment requires (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, *683 and (5) no other remedy at law available to the plaintiff. Finova Capital Corp. v. IT Corp. , 33,994 (La. App. 2 Cir. 12/15/00), 774 So.2d 1129, 1132. Equitable considerations and estoppel cannot be permitted to prevail when in conflict with positive written law. Fishbein v. State ex rel.La. State Univ. Health Sciences Ctr. , 2004-2482 (La. 4/12/05), 898 So.2d 1260, 1270.
Here, the "enrichment" gained was to BCL; Long was not enriched individually. In Barton's rule to show cause, he notes that payment of commissions to Lea Hall Properties "were a burden to BCL," and that the alternative arrangement where he would procure tenants served "to reduce this burden." By not paying Lea Hall Properties' commission for the lease of the property, the owner of the property (i.e. , BCL) derived the financial benefit. In that way, both Barton and Long (as the two equal members) received a benefit by Barton's actions as a member/manager of BCL. Specifically, Barton received a benefit of one-half the savings to BCL as a 50/50 member of the LLC. Therefore, Long did not enjoy an enrichment at Barton's "impoverishment"-BCL benefited from the arrangement that served to ease a financial burden to the business, which benefit flowed through to its members.
Also, we agree with Long that Baker v. Maclay Properties Co. , 1994-1529 (La. 1/17/95), 648 So.2d 888, is inapplicable to the facts at hand. In that case, the Supreme Court determined that Baker's only remedy was in unjust enrichment. Id. at 897. Barton's reliance on Baker to support his position that Long was unjustly enriched is misplaced because the plaintiff in Baker who sought a real estate commission was a Louisiana licensed real estate broker. Barton clearly is not a licensed real estate broker or agent. On the other hand, we agree that this case is directly in line with Brown v. Williams , 22,716 (La. App. 2 1991), 587 So.2d 732. There, this court concluded:
Unlicensed or unregistered persons may not recover a real estate commission, fee, or compensation of any sort, regardless of the benefit they may have provided to the seller. The unlicensed or unregistered broker may not even validly contract to perform the business of a real estate broker in Louisiana. The prohibition would defeat any claim ..., be it contractual or quasi contractual, for a commission arising out of these facts. (Emphasis added; citations omitted).
Id. at 738. The fact that Barton lacks a real estate license but seeks payment for performing "real estate activities" is determinative. The protections for licensed real estate brokers and agents by the Louisiana legislature and courts are strong and abundantly clear.[2] Accordingly, Barton is not entitled to recover, even under the theory of unjust enrichment.
Frivolous Appeal
Long answered Barton's appeal and submits that the appeal is frivolous, arguing that his claims are clearly prohibited by the statutory law and misrepresent jurisprudence. This argument is without merit.
The court may award damages for a frivolous appeal in civil cases as provided by law. URCA 2-19. Louisiana C.C.P. art. 2164, provides:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application *684 for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
This provision is penal in nature and is to be strictly construed. Cox v. O'Brien , 49,278 (La. App. 2 Cir. 8/13/14), 147 So.3d 809, writ denied , 2014-1907 (La. 11/21/14), 160 So.3d 972. Appeals are always favored and unless the appeal is unquestionably frivolous, damages will not be allowed. Id. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. Id. The award of damages and attorney fees for a frivolous appeal are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. Nesbitt v. Nesbitt , 46,514 (La. App. 2 Cir. 9/21/11), 79 So.3d 347, writ denied , 2011-2301 (La. 12/2/11), 76 So.3d 1178.
After a review of the record, we do not consider Barton's appeal to be frivolous. We do not detect that Barton appealed for the purpose of delaying litigation or to harass Long. Although we have determined Barton's positions ultimately to be incorrect and unsupported by the law, his positions are thoughtfully articulated and reasoned. We do not believe his appeal rises to the level of being frivolous. Therefore, we decline to award Long's request for damages.
CONCLUSION
Considering the foregoing, the judgment of partial dismissal in favor of William R. Long which sustained his peremptory exception of no right of action is affirmed. All costs of this appeal are assessed to Barry Barton.
AFFIRMED.

Long refers to the property as "Park Plaza."

We recognize similar protections for Long's and Barton's respective professions: attorneys (La. R.S. 37:213 ) and certified public accountants (La. R.S. 37:83 ).