648 So.2d 888 (1995)
Burk BAKER
v.
MACLAY PROPERTIES COMPANY.
No. 94-CA-1529.
Supreme Court of Louisiana.
January 17, 1995.
*891 Steven A. Adams, Baton Rouge, for applicant.
Alfred B. Shapiro, Shapiro & Shapiro, Baton Rouge, for respondent.
WATSON, Justice.[1]
A direct appeal was lodged to review the district court's summary judgment, holding former LSA-R.S. 37:1437(A) and former 3 La.Adm.Code 46:LXVII, Sec. 6301[2] unconstitutional. The former statute and Louisiana Real Estate Commission regulation established a residency requirement for Louisiana real estate brokers' licenses. Out-of-state brokers desiring to do Louisiana business were required to cooperate with Louisiana brokers and give a resident broker at least 50 percent of any fees or commissions.

FACTS
In late December, 1990 or early January, 1991, Judith Rymes[3] and Irving McGowan contacted Burk Baker on behalf of Maclay Properties Co., a Dallas, Texas corporation engaged in the real estate brokerage and property management business. Maclay was *892 interested in transacting business in Louisiana. Under Louisiana law at that time, a real estate broker was required to be domiciled in Louisiana for at least six months and a real estate salesperson had to be a Louisiana domiciliary. The Louisiana Real Estate Commission allowed out-of-state brokers to engage in business in Louisiana if they entered into cooperating brokerage agreements with Louisiana brokers. Baker had been a licensed real estate broker in Louisiana since 1978.
On January 25, 1991, Baker and Maclay entered into a cooperating brokerage agreement under which Baker would act as Maclay's Louisiana broker for a monthly fee of $300.[4] The agreement stated the parties' arrangement "will be in accordance with LA. (sic) statue ref. No. 6301," referring to 3 La.Adm.Code 46:LXVII, Sec. 6301. At that time, Sec. 6301 provided, among other things, that a Louisiana broker acting under a cooperating brokerage agreement receive at least 50 percent of any commissions or fees. This agreement was filed with the Louisiana Real Estate Commission. An earlier draft of the written agreement, which did not make reference to Sec. 6301, was not accepted by the Commission. Under the agreement, Baker became the sponsoring broker for Rymes, Maclay's real estate salesperson in Louisiana.
Maclay paid the $300 monthly fee until it terminated the cooperating brokerage agreement on June 1, 1991. No commissions or fees were paid to Baker. After the agreement had terminated, Baker believed that Maclay managed and closed several property management or lease transactions during the terms of the agreement. Baker demanded documentation concerning these transactions and payment of 50 percent of the commissions. When Maclay refused to comply, Baker filed suit to recover the brokerage fees mandated in the cooperating brokerage agreement.
Maclay denied that any transactions were pending or completed after the date of the agreement and denied that any commissions or fees were due Baker. Maclay filed a reconventional demand against Baker and a third party demand for declaratory judgment against the State and the Louisiana Real Estate Commission, alleging that the regulation mandating the fee and commission sharing clause in the cooperating brokerage agreement and its statutory basis were unconstitutional. A motion for summary judgment was filed by Maclay asserting that the unconstitutional statute and regulation rendered the fee-sharing clause of the cooperating brokerage agreement a nullity, precluding Baker's recovery under its terms.
The trial court granted summary judgment declaring former LSA-R.S. 37:1437(A) and former 3 La.Adm.Code 46:LXVII, Sec. 6301 to be unconstitutional. *893 Baker's demands were dismissed as unenforceable. A direct appeal was taken to this Court. La. Const. art. 5, § 5(D). Although the statute has since been amended and the regulation has been repealed and replaced, the question of their unconstitutionality must still be determined because it bears directly on Maclay's argument that the agreement entered into in conformity with them is unenforceable. See Jordan v. Cosey, 434 So.2d 386 (La.1983) (constitutionality of statute decided after statute's amendment).

LAW AND DISCUSSION
A motion for summary judgment is properly granted only if there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The mover has the burden of establishing that no material fact issues exist, so inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Potter v. First Federal S & L, 615 So.2d 318, 325 (La.1993). An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967. "Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted." Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183. An appellate court will review a summary judgment de novo under the same criteria used by the district court which determined summary judgment was appropriate. Reynolds, supra.
Maclay argues the trial court properly granted summary judgment, because the mandatory fee-sharing provision of the cooperative brokerage agreement was based on a statute and regulation which violated the Privileges and Immunities Clause of the United States Constitution.
On January 25, 1991, when the parties entered into the cooperating brokerage agreement, R.S. 37:1437 provided in pertinent part:
§ 1437. Application for license
A. Any person domiciled in Louisiana for not less than six months and desiring to act as a real estate broker or any person domiciled in Louisiana and desiring to act as a real estate salesperson must file an application for a license with the commission.
* * * * * *
E. A nonresident, licensed in his resident state and whose resident state permits a Louisiana resident to obtain a broker's or salesperson's license and engage in the real estate business in that state, may obtain a broker's or salesperson's license and engage in the real estate business in this state under conditions prescribed by the commission. Such conditions shall be equal to or more onerous than the conditions applicable to a resident of Louisiana which are prescribed by the state of the nonresident.
There is no evidence that Texas at that time permitted a Louisiana resident broker to obtain a Texas broker's license. Since Baker admits that Maclay could not legally transact real estate business in Louisiana without entering into an agreement with a Louisiana broker, there was apparently no reciprocity between the states. An out-of-state broker whose resident state did not have a Louisiana reciprocal agreement could conduct business in Louisiana only by following the requirements of 3 La.Adm.Code 46:LXVII, Sec. 6301, which at that time provided:
Chapter 63. Out-of-State Broker Cooperation
§ 6301. Broker Cooperation
A Louisiana broker may cooperate with a licensed broker of another state on the appraisal, sale or lease of real property within the limits provided in the Louisiana Real Estate License Law, and under the following conditions:
A. The appraisal, sale or lease of real property shall be handled under the direct supervision of a Louisiana broker who shall take full responsibility for all actions of the nonresident broker.
B. Both the Louisiana broker and the nonresident broker agree to sign the written reports and agreements and to comply *894 with the Louisiana Real Estate Licensing Law and with the rules and regulations of the Louisiana Real Estate Commission.
C. In each instance herein where a Louisiana broker enters into a cooperating agreement with a nonresident broker for the appraisal, sale or lease of Louisiana real estate, the Louisiana broker must file two copies of the cooperating agreement with the Louisiana Real Estate Commission prior to the appraisal, sale or lease being made. A written cooperating agreement is required to be filed for each separate appraisal, sale or lease.
D. Any fee or commission received under this rule wherein a licensed Louisiana broker cooperates with a licensed broker of another state, must be divided on a basis wherein the licensed Louisiana broker shall receive at least 50 percent thereof.
Pursuant to an inquiry made by the Louisiana Real Estate Commission's general counsel, the Louisiana Attorney General's office issued an opinion advising that the residency requirement in LSA-R.S. 37:1437(A) unconstitutionally discriminated against non-residents in violation of the Privileges and Immunities Clause of the U.S. Constitution. The Attorney General's office also found the reciprocity requirement of LSA-R.S. 37:1437(E) unconstitutional because it created two classes of non-residents subject to different licensure requirements on an irrational basis. La.Atty.Gen.Op. #90-450 (October 25, 1990).
Although the Attorney General's opinion was rendered before this agreement was entered into, the statute and regulation were not changed until after the agreement terminated. R.S. 37:1437 was amended by 1991 La.Act. No. 642, effective September 6, 1991, to eliminate the residency and reciprocity requirements. Sec. 6301 was repealed by the Louisiana Real Estate Commission in July 1991. A new Sec. 6301, promulgated in June 1993, provides among other changes that "[t]he percentage of fees or commission to be received by the Louisiana broker and the out-of-state broker shall be negotiable between the two parties and shall be agreed upon, in writing, by the parties in their cooperative agreement."
Art. IV, § 2 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Privileges and Immunities Clause, like the Commerce Clause, was derived from the fourth of the Articles of Confederation and was intended to create a national economic union. Supreme Court of N.H. v. Piper, 470 U.S. 274, 279-280, 105 S.Ct. 1272, 1275-76, 84 L.Ed.2d 205 (1985). The Supreme Court has routinely held that "one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." Toomer v. Witsell, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948).
The Privileges and Immunities Clause does not prevent a State from discriminating against non-residents where there is sufficient reason for different treatment and the discrimination bears a substantial relationship to a legitimate state objective. In determining whether the discrimination bears a substantial relationship to the State's objective, the Court considers the availability of less restrictive means. Piper, 470 U.S. at 284, 105 S.Ct. at 1278.
The United States Supreme Court has determined that certain state statutes discriminating between residents and non-residents engaged in business violate the Privileges and Immunities Clause. Ward v. Maryland, 79 U.S. (12 Wall.) 418, 20 L.Ed. 449 (1871), invalidated a statute under which residents paid an annual fee of $12-$150 for a license to trade foreign goods, while non-residents were required to pay a $300 fee. Toomer, supra, held that non-resident fishermen could not be required to pay a license fee a hundred times the amount paid by resident fishermen. Hicklin v. Orbeck, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), struck down a statute which required a resident hiring preference for all employment related to development of the State's oil and gas resources. Piper, supra, found a state supreme court rule limiting bar admissions to resident attorneys violated the Privileges and Immunities Clause. See also Frazier v. *895 Heebe, 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987); Supreme Court of Virginia v. Friedman, 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988); Barnard v. Thorstenn, 489 U.S. 546, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989).
Under former R.S. 37:1437(A) and former Sec. 6301, Maclay was prohibited from obtaining a Louisiana real estate broker's license. Maclay was not totally excluded from engaging in real estate transactions in Louisiana. Out-of-state real estate brokers whose states did not have reciprocity agreements with Louisiana could enter into cooperating agreements with Louisiana real estate brokers under a mandatory fee-splitting arrangement. This alternative, however, did not allow such non-resident real estate brokers to engage in business on the same terms as resident real estate brokers. See Piper, 470 U.S. at 277 fn. 2, 105 S.Ct. at 1274 fn. 2.
Both the State and the Commission admitted the effect of the former statute's residency requirement was to completely prohibit non-resident brokers (in states without a Louisiana reciprocity agreement) from obtaining a Louisiana license; instead of supporting the former regulation, the Commission merely stated former Sec. 6301 had been repealed and replaced. The state failed to show that the discrimination between residents and non-residents had a substantial relationship to a legitimate state objective. There was no showing that less restrictive means would achieve a state object since neither the State nor the Commission opposed Maclay's motion for summary judgment.
The residency requirement of former R.S. 37:1437(A) was facially unconstitutional; there was no reasonable state purpose in denying a non-resident a license as a real estate broker or salesperson. If the state's objective were to restrict broker or salesperson licenses to those persons knowledgeable in Louisiana property law and procedures, less restrictive means could have been imposed to achieve that objective, i.e. mandatory attendance at seminars or increased reporting requirements. See Piper, 470 U.S. at 285 fn. 19, 105 S.Ct. at 1279 fn. 19.
Baker argues it is unnecessary to determine the question of unconstitutionality because there is no connection between former R.S. 37:1437(A) and former Sec. 6301. He claims there was no requirement of brokerage cooperation under Sec. 6301 and that Maclay could have sought appropriate clearance from the Commission to conduct business on its own in Louisiana. This argument ignores the reality of the state of the law when the cooperating brokerage agreement was confected. The Commission's regulations were promulgated under the authority of and in connection with the legislature's pronouncements on the regulation of the real estate profession. R.S. 37:1437(A) precluded Maclay's participation in Louisiana real estate matters as a broker strictly on the basis of residency. The permissive language of the regulation, i.e. "Louisiana broker may cooperate", was misleading. The only way Maclay could participate in Louisiana real estate transactions, in the absence of a reciprocity agreement with his home state, was by following the requirements of Sec. 6301. Sec. 6301's fee-splitting requirement was mandatory ("any fee or commission").
The trial court properly found former LSA-R.S. 37:1437(A) and former 3 La.Adm. Code 46:LXVII, Sec. 6301 to be unconstitutional violations of the Privileges and Immunities Clause. To determine what effect this finding of unconstitutionality had on the parties' agreement, several contract concepts must be reviewed.
LSA-C.C. art. 1966 provides that an obligation cannot exist without a lawful cause. Cause is the reason that a party obligates itself. LSA-C.C. art. 1967. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. LSA-C.C. art. 1968. A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. LSA-C.C. art. 2030. Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an *896 absolute nullity. LSA-C.C. art. 7. See Holliday v. Holliday, 358 So.2d 618 (La.1978).
Maclay asserts the agreement with the fee-splitting requirement was confected with Baker only because it was required under the statute and regulation then in existence. This claim is supported by Baker's answers to interrogatories and deposition testimony attached as exhibits to the summary judgment motion. The statute and regulation under which Baker and Maclay contracted was an unconstitutional violation of the Privileges and Immunities Clause. The United States Constitution is the supreme law of the land, more than a "rule of public order" or an expression of public policy. U.S. Const. art. VI.
Although Maclay has argued that only the mandatory fee-splitting provision of the contract is an absolute nullity, and not necessarily the contract as a whole, the exhibits to the motion for summary judgment show the contract would not have been made without the null provision. LSA-C.C. art. 2034 (nullity of a provision does not render the whole contract null unless, from the nature of the provision or parties' intention, it can be presumed that the contract would not have been made without the null provision). The parties admit the agreement was not accepted by the Commission until Sec. 6301 was specifically incorporated into it. Thus, the agreement under which Baker seeks to collect fees and commissions is an absolute nullity and unenforceable.
Baker argues that prior to the written agreement, the parties entered into a binding oral agreement with the same fee-splitting arrangement and that nullity of the written agreement does not preclude his claim for fees and commissions. Where parties intend to reduce their negotiations to a written contract, neither party is bound until the contract is reduced to writing and signed by both parties. Breaux Brothers Const. Co. v. Associated Contractors, 226 La. 720, 77 So.2d 17 (1954). Both Baker and Maclay intended their agreement to be reduced to writing. The agreement was confected pursuant to Sec. 6301 and its provisions were incorporated into the agreement. Sec. 6301 required that copies of a written agreement be filed with the Louisiana Real Estate Commission prior to any appraisal, sale or lease.
Based on the pleadings, answers to interrogatories and deposition testimony before it, the trial court properly found there was no genuine issue of material fact and that Maclay was entitled to summary judgment as a matter of law. La.C.C.P. art. 966. Baker's claim for fees and commissions under the written agreement with Maclay was properly found to be unenforceable.
The trial court erred, however, in dismissing all of Baker's claims against Maclay. In addition to fees or commissions emanating from a contract, "a realtor can win a commission dispute, if he is the procuring cause of the sale, or if the principal would otherwise enjoy an unjust enrichment at the broker's expense." Creely v. Leisure Living, Inc., 437 So.2d 816, 820 (La.1983); Grace Realty Co. v. Peytavin Planting Co., 156 La. 93, 100 So. 62 (1924); but see Bender v. International Paint Company, 237 La. 569, 111 So.2d 775 (1959) (procuring cause is not sufficient in the absence of employment or an express or implied contract for seeking recovery on a quantum meruit basis).
In a supplemental and amending petition, Baker stated an alternative claim for "unspecified damages and quantum meruit damages." As a civilian concept, quantum meruit refers to the measure of compensation or price unstated in a contract. Morphy, Makofsky & Masson v. Canal Place, 538 So.2d 569 (La.1989). The contract between Baker and Maclay is an absolute nullity. An absolutely null contract is deemed never to have existed. LSA-C.C. art. 2033. Thus, Baker has not stated a claim for quantum meruit under a contract.
Unfortunately for the purity of the civilian concept of quantum meruit, the term is used interchangeably with the common law substantive law claim geared to equity also known as quantum meruit. See Morphy, etc., 538 So.2d at 574-575 for an excellent discussion of the problem. In the absence of a contract, Baker stated a claim for actio de in rem verso or unjust enrichment. Edwards *897 v. Conforto, 636 So.2d 901 (La.1993); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). A few court of appeal cases have held a real estate broker is not entitled to payment, even on a quantum meruit basis, when he has no express or implied contract with the party from whom he seeks a commission. Woods Realty, Inc. v. Brimberry Trust, 521 So.2d 810 (La.App. 2 Cir.1988); Prado v. Golemi, 540 So.2d 589 (La.App. 5 Cir.1989); Brown v. Williams, 587 So.2d 732 (La.App. 2 Cir.1991). This is true if the civilian concept of quantum meruit is understood; there can be no determination of the measure of compensation or price unstated in a contract if there is no contract. This does not mean a claimant may not assert a claim for unjust enrichment.
Baker alleged he agreed to hold the Louisiana salesperson's license of Rymes and that in doing so, exposed himself to professional and personal risk. Baker alleged he was required to prepare documents for the Louisiana Real Estate Commission and was obligated to retain copies of certain business records under law. Since Louisiana has fact pleading, Baker's possible confusion of the common law and civil law meanings of quantum meruit is not injurious to his claim. LSA-C.C.P. arts. 854, 862; First South Prod. Cr. v. Georgia-Pacific, 585 So.2d 545 (La.1991). On remand, the trial court must determine whether Maclay owes Baker, or whether Baker owes Maclay reimbursement.
The five requirements for a showing of unjust enrichment, or actio de in rem verso, are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. Minyard; Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116 (La.1974); Creely, supra; Edwards, supra.
On remand, Baker must show that Maclay was enriched (by the payment of commissions); that he was impoverished (by failure to recover commissions or by undertaking professional and personal risk); and that there was a connection between the enrichment and the impoverishment (that Maclay earned commissions to which Baker was entitled). The fourth requirement has been interpreted as:
"[c]ause" is not in this instance assigned the meaning commonly associated with contracts, but, rather, it means that the enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee. A valid juridical act with the enrichee is essential to a finding of "cause."
Edmonston, 289 So.2d at 122. In this case, there is no contract between Baker and Maclay which would serve as "cause" as it has been defined in this context. Maclay's alleged enrichment is not justified by this Court's finding that the contract which had been confected between the parties was based on an unconstitutional statute and regulation. To do so would constitute a windfall to Maclay. See Edmonston, supra. Because the contract which existed between Baker and Maclay is an absolute nullity, Baker has no contractual rights to assert. Since he was not a procuring party to any of the alleged business transactions, his only remedy is unjust enrichment damages.

CONCLUSION
The trial court properly granted summary judgment finding former LSA-R.S. 37:1437(A) and former 3 La.Adm.Code 46:LXVII, Sec. 6301 to be unconstitutional and the contract between Baker and Maclay, based upon them, to be unenforceable. The trial court erred in dismissing all of Baker's claims against Maclay since he stated a claim for unjust enrichment. The case is remanded to the trial court for a determination of whether Baker is entitled to damages for unjust enrichment.
SUMMARY JUDGMENT AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Judge William Norris, III, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, in place of Associate Justice Pike Hall, Jr.

Kimball, J., not on panel. Rule IV, Pt. 2 § 3.
[2] The district court judgment erroneously referred to the Louisiana Real Estate Commission regulation as 3 La.Adm.Code 45: LXVII, Sec. 6301.
[3] Alternatively referred to as Rimes, Rhymes, or Frantz.
[4] The cooperating brokerage agreement between the parties was contained in the following January 25, 1991 letter:

Mr. Burk Baker, Realtor
3851 South Sherwood Forest, Suite 210
P.O. Box 80662
Baton Rouge, La. 70898
Dear Burk:
It was indeed a pleasure to meet you and begin what we hope will be a long and mutually profitable relationship.
This letter is to outline the terms and conditions under which you will serve as our "cooperating broker" for Louisiana.
1. We will prepare and mutually execute documents that are required to be filed (if any) at Maclay Properties expense.
2. This will be a month to month agreement that will require a thirty day advance notice by either one of us to terminate.
3. During this agreement Maclay Properties will pay to you in advance on the first day of each month a fee of $300.00.
4. Maclay Properties will pay all expenses that arise out of our agreement, and will indemnify you totally against any legal actions that might come from your association with us.
5. Our arrangement will be in accordance with LA. (sic) statue ref. No. 6301.
6. Burk Baker, Realtor will act as our "cooperating broker" Louisiana, and will represent us in any required dealing with the Real Estate Commission.
If this letter accurately represents your understanding of our agreement please sign in the space below and return the original to me. Enclosed is our check in the amount of $370.00 representing the partial fee for January and all of February's fee.
 Very truly yours,
 Irving E. McGowan
 Executive Vice President
Agreed and accepted:
Burk Baker, Realtor.