LSOL GOTHARD, Judge.
This is an appeal from a judgment of the First Parish Court for the Parish of Jefferson in which the court held that defendant, Bank One Corporation, was hable to plaintiff for damages for breach of bond ordinance, breach of fiduciary duty and unjust enrichment. The matter originated with a petition filed by Lillian Levee Lambert in which she seeks damages from the First National Bank of Commerce, for breach of bond ordinance/contract, breach- of fiduciary duty and for unjust enrichment. In a supplemental and amending petition, plaintiffs substituted Bank One Trust, N.A. (Bank One) as defendant. In the petition, Ms. Lambert alleges she is the usufructu-ary of a municipal bond in the principal amount of $20,000.00 originally purchased by her now deceased brother, Lucius Levee.
Bank One answered the petition and filed a third party demand against Donald Lambert, executor of the estate of Lucius Levee, for indemnity. Bank One also filed a motion for summary judgment that was denied by the trial court. That ruling was upheld by this Court and the Louisiana Supreme Court on supervisory writs. The matter proceeded to trial, after which the court rendered a judgment in favor of plaintiff, Lillian Levee Lambert, and against Bank One in the amount of $7,330.00 for interest from date of maturity of the bond until date of remittance of the principal amount.

FACTS

Lucius P. Levee purchased a “Series 1989 A” Municipal Bond in the principal amount of $20,000.00 with a maturity date of June 1,1994. The original Lbond certificate was issued on January 27, 1992. In accordance with the provisions of the bond Bank One, as trustee and paying agent, paid annual interest at the stated rate of 7% from the time of purchase in 1992 until its maturity date in 1994. When the bond matured the bank received the principal funds in the amount of $20,000.00 and held it in a non-interest bearing account.
Lucius Levee died on August 19, 1993. The succession was opened and Donald Lambert acted as testamentary executor. Mr. Lambert listed the bond, and its maturity date in the sworn descriptive list filed in the succession proceedings. The court entered a judgment of possession recognizing the executor and others as the residual legatees and put them in possession of estate assets, including the bond certificate at issue herein. The assets were subject to a usufruct in favor of Lillian Levee. Lambert, decedent’s sister and plaintiff herein.
The $20,000.00 principal funds received by the bank remained in the bank in a non-interest bearing account for five years. In September 1999, the bank escheated the unclaimed funds to the State in accordance with State Law. On December 15, 1999, the executor of the estate, Donald Lambert, wrote to the bank requesting remittance of the principal on the bond certificate. Upon receipt of the letter, the bank issued a check to the Estate of Luci *1159 us P. Levee in the amount of the principal $20,000.00 and subsequently recouped the funds from the State. Mr. Lambert sent a second letter demanding interest from date of maturity to date of remittance of the principal. The bank maintained no interest was due.
Whether the plaintiff is entitled to post-maturity interest is the subject of this lawsuit. Plaintiff, Ms. Lillian Lambert, as usufructuary of the bond, filed this action maintaining the bank owes interest on the principal funds from date of maturity. The bank counters that it has met all obligations as trustee on the bond and does not owe any further interest. After hearing the matter, the trial court rendered judgment in favor of plaintiff and against the bank in the amount of 14$7,330.00. In a subsequent judgment, the trial court dismissed the bank’s third party claim against the executor of the estate, Donald Lambert. Bank One brings this appeal.
In the reasons for judgment, the trial court stated:
This is not that complicated of a case. It’s the matter of a bond that matured and it was not redeemed, I want to use the word redeem on maturity by the bond holder, in this case the succession of the bond holder. I guess it’s unfortunate that this man died in 1993, the bond matures in '94, probably sat in a lawyer’s office until there was a Judgement (sic) of possession before the heirs probably ever saw it. So I don’t know who would have known whether or not the bond was matured or whether or not it would have been presented for payment. The question, that I really see, that is before this Court, is a matter of equity. Is it equitable for a financial institution to hold funds that belong to someone else for an extended period of time, and not at least pay them minimum of past (sic) book interest on this money. I know the banks have it deposited in the accounts that they are going to make money off of. They’re not in the business of losing money. The banks are in the business of making money. I’m not saying that they’re a bad guy. It just boils down to, you had his money. You made money off of it. I think that the chances are that you made money off of it were better then (sic) you lost money, and just looking at Article 10 in the Civil Code just balls (sic) down to equity and an unjust enrichment....
The bond at issue herein is a Louisiana Public Facilities Authority Health Facilities Revenue Refunding Bond (Sisters of Mercy Health System, St. Louis, Inc.) 1989 Series A, written pursuant to LSA-R.S. 9:2341-2347. The Indenture of Trust between the Louisiana Public Facilities Authority and the First National Bank of Commerce [1], as trustee was made part of the record. The bond issue was authorized for Mercy Hospital of New Orleans, a non-profit corporation, to refinance a debt of $20,825,000 used for renovations and improvements at the hospital. The bond issue included both series A and B bonds. As previously stated the bond at issue in this matter is a series A bond.
At trial Mr. Timothy Brennan, manager of the portfolio of bond issues for the bank, testified. He explained that, although the Indenture Trust Agreement is a contract between the issuing authority and the bank, it affects four primary parties: |sthe issuing authority, (Louisiana Public Facili *1160 ties Authority); the obligated party, (Sisters of Mercy Health System, St. Louis, Inc.); the trustee under the Indenture, (the bank); and, the bondholder, (the Estate of Lucius Levee). The bank acts as a policing agent for the contract. The responsibility of the bank is to accept the payments of the obligated party and hold the funds for payment of interest as due, and payment of principal at presentment of items that mature, or to escheat the funds to the State if unclaimed after five years.
He further explained that the obligor is obligated to pay interest on the bond as provided for on the face of the bond. In the case of the Levee bond the interest was 7% until date of maturity, or June 1, 1994. The obligor was not obligated to pay interest beyond that date. The bank’s obligation was to receive the money from the obligor and remit any interest to the bondholder on the obligor’s behalf. The bank is under no obligation to pay interest or principal payments to any bondholder other than what is received by it from the obligor.
Mr. Brennan did state that the funds would be put into a general account at the bank and that it is the custom in the industry to use these obligated funds to earn interest on behalf of the bank. Mr. Brennan compared this account to that of a non-interest bearing checking account. Mr. Brennan stated that no notice was given to the bondholder regarding the date of maturity of the bond, although two notices were sent to Mr. Levee before the funds were escheated to the State.
It is clear from the Indenture of Trust agreement that the nature and extent of the security, as well as the rights, duties, and obligations of the parties, including the trustee and the bondholder, are a matter of contract, and expressly provided for in the agreement.
Each party cites the agreement for support. Plaintiff argues that the bank had an obligation to notify the Estate of the maturity date, and that its failure to do |fiso makes the bank liable for interest after the maturity date of the bond. Plaintiff cites Section 5.05 of the agreement that reads as follows:
Bonds shall be called for redemption by the Trustee as herein provided upon receipt by the Trustee at least sixty (60) days prior to the redemption date of a certificate of the Borrower signed by the Borrower Representative specifying the series, maturities and principal amount of Bonds to be called for redemption, the applicable redemption price or prices and the provision or provisions of the Indenture pursuant to which such Bonds are to be called for redemption. The provisions of the preceding sentence shall not apply to the redemption of Bonds pursuant to the sinking fund provided in Section 5.03 hereof and such Bonds shall be called for redemption by the Borrower or the Issuer. In case of every redemption, the Trustee shall cause notice of such redemption to be given by mailing a copy of the redemption notice by first class mail to the registered owners of Bonds designated for redemption, at their addresses as the same shall last appear upon the registration books, in each case not less than thirty (30) days prior to such redemption date.
The bank argues that the above cited section of the Indenture Trust is inapplicable since it governs redemption of the bonds by the issurer, prior to maturity. We agree. A comprehensive review of Section *1161 5 of the Indenture Trust shows that it is entitled “Redemption Of Bonds.” The first part of Section 5 states:
The Series 1989 A Bonds are not subject to optional redemption prior to maturity but the Series 1989 A Bonds are subject to extraordinary redemption upon the occurrence of certain events as provided in Section 5.02 hereof. In such events, the Series 1989 A Bonds shall be subject to redemption by the Issuer, in whole at any time or, in certain circumstances, in part (in integral multiples of $5,000) on any interest payment date, at a redemption price equal to the principal amount thereof and accrued interest to the redemption date.
Section 5.02 provides:
The Series 1989 A Bonds and Series 1989 B Bonds are also redeemable by the Issuer upon the written direction of the Borrower in whole at any time, or with respect to redemption pursuant to subsection (1) of this Section 5.02 in part on any interest payment date, at a redemption price equal to the principal amount of each Series 1989 A Bond and each Series 1989 B Bond redeemed plus accrued interest to the redemption date, without premium in the event that (1) any Property shall have been damage, destroyed or condemned (or sold under the threat of condemnation) to such an extent that, as determined by the Governing Board of the Borrower (taking into account any business interruption insurance), the revenue-producing capability of the Co-Obligated Group as a whole will be 17materially impaired for a period of not less than six (6) consecutive months and, In the absence of the redemption of bonds, the interests of the Bondholders would be materially adversely affected or (2) any member of the Co-Obligated Group is required or ordered, by legislative, judicial or administrative action of the United States or the State, or any agency, department or subdivision thereof, to operate any of its facilities in a manner inconsistent with the stated goal, purposed, philosophies and policies of the Co-Obligated Group or in contravention of the Ethical and Religious Directives, including administering medical treatment and permitting surgical procedures, and such legislative, judicial or administrative action is applicable to such member of the Co-Obligated Group because the Borrower is a party to the Loan Agreement or by any other reason relating to the Co-Obligated Group being a party to the financing through the issuance of Bonds by the Issuer; provided that if less than all of the Series 1989 A Bonds or the Series 1989 B Bonds are to be redeemed under this Section, the Group Representative shall, prior to such redemption, determine that such redemption will not prejudice the interests of the Holders of Bonds which will remain Outstanding.
It is clear that this section, which requires notice to the bondholder, refers to redemption of bonds on a date other than the date of maturity shown on the face of the bond. There is no notice requirement of maturity date for Series A Bonds. Thus, we are not persuaded by plaintiffs argument that the bank breached the agreement, and its fiduciary duty, by failing to notify plaintiff or the Estate of the maturity date of the bond.
In support of its position, the bank cites Section 3.09, which reads in pertinent part as follows:
In the event any Bonds shall not be presented for payment when the princi *1162 pal thereof becomes due, either at maturity or at the date fixed for redemption thereof or otherwise, if funds sufficient to pay such Bonds shall have been made available to the Trustee for the benefit of the owner thereof, all liability of the Issuer to the owner thereof for the payment of such Bond, as the case may be, shall forthwith cease, determine and be completely discharged, and thereupon it shall be the duty of the Trustee to hold such fund or funds, without liability to the owner of such Bond for interest thereon, for the benefit of the owner of Bond, as the case may be, who shall thereafter be restricted exclusively to such fund or funds, for any claim of whatever nature on his part under this Bond Indenture or on, or with respect to, said Bond, (emphasis added)
We find that the above cited section of the Indenture Trust agreement is clear, and is dispositive of this matter. Accordingly, we find the bank was not|sobligated to pay post-interest on the bond, which was in the physical possession of the plaintiff, or the Estate. Therefore, we find that plaintiff has not proven the cause of action alleged in her breach of contract/fiduciary duty claim.
We note that in ruling for the plaintiff in this matter, the trial court did not find breach of contract or fiduciary duty. Rather, it used principles of equity and unjust enrichment. In Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888, 897, the Louisiana Supreme Court set forth the following factors necessary to establish unjust enrichment: 1) there must be an enrichment; 2) there must be an impoverishment; 3) there must be a connection between the enrichment and resulting impoverishment; 4) there must be an absence of “justification” or “cause” for the enrichment and impoverishment; and, 5) there must be no other remedy at law available to plaintiff.
LSA-C.C. art.2055 provides that, in the articles concerning conventional obligations or contracts, equity “is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.” We find that, in this case neither the principles of unjust enrichment nor equity support a ruling for the plaintiff. The Indenture Trust agreement is clear and needs no interpretation. Further, the bond was in the physical possession of the Estate and the maturity date is clearly marked on its face. Therefore, there was a justification for the bank’s placement of the un-remitted principal funds in a non-interest bearing account until escheatment to the State.
For the foregoing reasons the judgment of the trial court is reversed and judgment is entered in favor of defendant, Bank One.

REVERSED.

. Now Bank One.