# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31303

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2019

Lyle W. Cayce
Clerk

BARRY J. BADEAUX,

      Plaintiff - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; CB&I GROUP, INCORPORATED,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-6606

Before STEWART, CLEMENT, and HO, Circuit Judges.

PER CURIAM:*

Barry Badeaux sued BP Exploration & Production, Inc.; BP America Production Company (collectively, "BP"); and CB&I Group, Inc. ("CB&I") for unjust enrichment arising from the alleged use of his design to contain the flow of oil released in the aftermath of the *Deepwater Horizon* oil spill. Badeaux appeals the district court's dismissal of his complaint for failure to allege

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31303

sufficient factual information to state a plausible claim. We AFFIRM the district court's judgment.

## I

This appeal involves one of the many disputes arising from the *Deepwater Horizon* oil spill. On April 20, 2010, an explosion on the *Deepwater Horizon* offshore drilling platform resulted in a massive oil spill in the Gulf of Mexico. Oil spewed into the surrounding coastal waters for months as BP and government authorities sought to stop it. When initial efforts to stop the flow of oil failed, BP solicited input from the public and "offered cash payments for useful ideas."[1]

In response to that request, Badeaux devised a plan to prevent the oil from entering local marshes and reaching the coastline by using "connected barges with attached oil skimmers" as a barrier to stop the flow of oil. Badeaux drew plans for his design, which "included the use of PVC pipe in a 'bar bell type' configuration" to connect the barges and oil skimmers, and he built a prototype at his own expense. On or about May 28, 2010, Badeaux presented a drawing of his design to a member of the Jefferson Parish Council. The council member submitted Badeaux's drawing to the United States Coast Guard for review and approval on Badeaux's behalf.

One week later, local officials from the parishes of Jefferson, St. Bernard, and Plaquemines allegedly met with President Barack Obama and asked for approval to use Badeaux's design. Shortly thereafter, the President of St. Tammany Parish indicated that St. Tammany would place "barges with skimming devices on them" at the mouth of the Rigolets to stop the flow of oil into Lake Pontchartrain. Similarly, a Jefferson Parish official "discussed the

---

[1] For purposes of this appeal, we assume the truth of Badeaux's well-pleaded allegations.

2

No. 18-31303

plan to use 60 barges to make a 7,000-foot barrier to block and channel the oil at the entrance to Barataria Bay." The Coast Guard allegedly approved Badeaux's "barge/oil skimmer plan," and by June 18, 2010, local officials began using his design to stop oil from flowing into the marshland.

Once Badeaux noticed that his design was being used without his consent, he "made several telephone calls to various BP representatives" to inform them that his design "could not be used without his permission or compensation," and he sent correspondence to BP demanding payment. BP did not respond. Badeaux then filed a claim under the *Deepwater Horizon* Economic and Property Damage Settlement Agreement, which BP denied. Badeaux never received any compensation for his design from BP.

Badeaux filed suit against BP and CB&I on May 18, 2018, asserting a single claim for unjust enrichment. Specifically, Badeaux alleges that BP paid CB&I millions of dollars to construct the "barge/oil skimmer" using his design without his permission. And the use of Badeaux's design allegedly "saved BP considerable amounts in damages." On August 7, 2018, BP and CB&I filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion and dismissed Badeaux's complaint on November 30, 2018. Badeaux timely appealed.

## II

## A

The district court had jurisdiction under 43 U.S.C. § 1349(b)(1). We have jurisdiction under 28 U.S.C. § 1291.

## B

We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we accept all "well-pleaded facts" as true and construe the complaint in the light most favorable to the plaintiff, we do not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor do "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

## III

The district court held that Badeaux did not allege sufficient factual information to state a plausible claim for unjust enrichment. Under Louisiana law, unjust enrichment has five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law. *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345–46 (5th Cir. 2009); *Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995).

Badeaux's unjust enrichment claim is, at best, speculative. As the district court discussed, the complaint offers only a vague description of Badeaux's design—a series of connected "barges and specialized oil skimmers" made with "PVC pipe in a 'bar bell type' configuration." And Badeaux has never provided any description of the device ultimately used to contain the oil spill other than that it "was the very design [he] gave to [the Jefferson Parish councilman] a few days earlier." This is exactly the type of unsupported,

conclusory assertion that we routinely reject. Even if the device ultimately used involved "connected barges and oil skimmers," without more detail, we cannot reasonably infer that it was Badeaux's invention.

Badeaux also failed to allege any facts as to how BP obtained his design. Although Badeaux claims he developed his design in response to BP's offer to pay for ideas used to address the oil spill, Badeaux never submitted his design to BP. Instead, he gave a drawing of his design to a Jefferson Parish councilman, who then gave it to the Coast Guard. At some point thereafter, BP allegedly entered into a multi-million-dollar contract with CB&I to construct a "barge/oil skimmer" barrier using Badeaux's design. And within a matter of weeks, Jefferson Parish officials allegedly began implementing Badeaux's plan. According to Badeaux, it is reasonable to infer that BP received his design from the Coast Guard or local officials. We disagree.

Badeaux failed to allege facts demonstrating above the speculative level that his design was communicated to BP or CB&I, much less that BP or CB&I used it. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"). Badeaux's allegations fail to establish that he conferred an actual benefit on BP or CB&I, which is a necessary element of his unjust enrichment claim. *See Richard*, 559 F.3d at 346. As a result, the district court properly granted the motion to dismiss Badeaux's complaint under Rule 12(b)(6).

## IV

In a single sentence at the end of his brief, Badeaux requests that we remand his case for an opportunity to amend his complaint so that he can cure any deficiencies. Although leave to amend should be freely given, Badeaux never moved to amend his complaint in the district court. "A party who neglects to ask the district court for leave to amend cannot expect to receive such a

dispensation from the court of appeals." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). And Badeaux has not indicated "specifically how he would amend his complaint to overcome the 12(b)(6) dismissal." *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994); *see also Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam) (affirming dismissal without granting leave to amend where plaintiff failed to "explain what facts he would have added or how he could have overcome the deficiencies found by the district court" (quoting *Goldsmith v. Hood Cty. Jail*, 299 F. App'x 422, 423 (5th Cir. 2008))). To the contrary, Badeaux has repeatedly "declare[d] the adequacy of his complaint," both in his response to the motion to dismiss and in his brief to this court. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). For these reasons, we deny Badeaux's request.

Accordingly, we AFFIRM the district court's judgment of dismissal.