| 3525 PRYTANIA STREET CONDOMINIUM ASSOCIATION, INC. | * | NO. 2023-CA-0077 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| PRYTANIA INVESTMENT | * | |
| PROPERTIES, LLC AND | | STATE OF LOUISIANA |
| NARINDER GUPTA | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-03484, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Rachael D. Johnson)

**JOHNSON, J. CONCURS IN RESULT**
**JENKINS, J. DISSENTS AND ASSIGNS REASONS**

Wade P. Webster
Douglas L. Grundmeyer
CHAFFE MCCALL
1100 Poydras Street
Suite 2300
New Orleans, LA 70163

      COUNSEL FOR PLAINTIFF/APPELLEE

Donald J. Miester, Jr.
Barry H. Grodsky
TAGGART MORTON, L.L.C.
1100 Poydras Street
Suite 2100
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**DECEMBER 13, 2023**

In this case, 3525 Prytania Street Condominium Association, Inc. ("Association") seeks to recover common condominium expenses from Prytania Investment Properties, L.L.C. ("PIP") and its sole shareholder, Dr. Narinder Gupta. PIP became the mortgagee of the four condo units at issue. Eventually, PIP bought the units at a sheriff's sale that it initiated. PIP paid all assessments it owed the Association after the sale was recorded more than one month later. During the time that PIP was mortgagee, it exercised its rights to collect rent on the mortgaged units as allowed by the mortgage. During the time in controversy, PIP collected $281,469.69 in rent.

The Association stakes its claim on two alternative legal theories: (1) management of the affairs of another (*negotiorum gestio*) and (2) unjust enrichment. After trial on the merits, the district court rejected all legal theories except unjust enrichment. The judge ruled in favor of the Association for the condominium assessments, attorneys' fees, and costs[1]. We affirm.

***Relevant Facts.***

---

[1] The amounts awarded were $200,239.87 for the assessments from the date of the sheriff's seizure until the date on which the Sheriff's sale to PIP was recorded. The trial judge also awarded $21,859.27 as attorneys' fees and costs.

This fact-intensive case was submitted at trial on documentary evidence and stipulations of the parties. The facts set forth below are evident from either the stipulations of the parties or documents in the record or both. In an effort to simplify, we will recite the critical events in chronological order where possible.

The parties stipulated that as of October, 2013, Trimark Realty, Inc. ("Trimark") owned units 220, 425, 608, and 611 in a condominium office building at 3525 Prytania Street in New Orleans. When Trimark acquired the units, they were already subject to a mortgage in favor of JPMorgan Chase Bank, N.A. ("Chase"). Trimark was not occupying the offices, but had leased them to third parties not relevant to this case. Trimark defaulted on the debt and Chase filed suit and seized[2] the property. By July 2018 Trimark also failed to maintain its corporate status as required by La. R. S. 12:1-1442. As a result, the Secretary of State terminated Trimark's corporate existence. PIP was then substituted as plaintiff in the foreclosure case. For reasons not revealed in the record, PIP did not move to a rapid foreclosure sale, but instead exercised the rights of the mortgagee for approximately five years.[3] The mortgage in question contained a standard provision that gave the PIP the right to collect rents that would otherwise be due to Trimark. It also gave the PIP the right to lease the underlying property. PIP did both. It collected rents on condominiums that were already leased and leased properties to third parties as they became available.

From October 2013 until November 2020, PIP did not pay regular assessments to the association. The total amount of accrued assessments sought by

---

[2] On August 19, 2015, the Sheriff issued a Notice of Seizure against Units 220, 425, 608 and 611.
[3] On September 24, 2020, PIP was the high bidder in the amount of $226,000 at the sheriff's foreclosure auction. The sheriff's sale was not recorded until November 17, 2020.

the Association was $200,239.87.[4]  After November 17, 2020, PIP began paying the assessments on its condominiums in full.

***Legal analysis.***

The question before the court can be stated succinctly: can the mortgagee of a condominium unit become liable for the condominium assessments under any set of facts or under any theory of law?  The Association posits that when a mortgagee exercises all rights of ownership of a condominium unit, that mortgagee becomes a *de facto* owner for the intents and purposes of the law.  The Association presented two legal theories that would support its recovery of assessments if the court accepts the initial proposition that PIP is the owner-in-fact of the units.  First, the Association argues that the legal concept of *negotiorum gestio* applies.[5]  That body of law holds that a person who manages the affairs of an owner when he fails to act or is absent is entitled to recover his expenses. Second, and only if *negotiorum gestio* does not apply, then the law of unjust enrichment entitles the Association to recover its expenses.

*De Facto ownership.*

In classical civilian doctrine, the elements of ownership are the *usus, fructus* and the *abusus.*[6] Anglicized, these terms are generally translated as the rights to use (*usus*), to receive the fruits or revenues (*fructus*), and right to alienate (*abusus*) the thing owned.  This doctrine is codified in La. C. C. art. 477, which provides that, "Ownership is the right that confers on a person direct, immediate, and

---

[4] The assessments sought by the Association took into account a credit for a payment of $70,030.00 that PIP made during the time that it acted as mortgagee.

[5] The doctrine of *negotiorum gestio* is now codified in La. C.C. arts. 2292 through 2297. The nomenclature is anglicized to be called management of the affairs of another.

[6] See analysis in *Campbell v. Pasternack Holding Co.,* 625 So.2d 477, 484 (La. 1993); and Charles A. Snyder, Note, *Civil Law Property—Partition of Land Subject to a Usufruct,* 24 La.L.Rev. 885, 886 (1964).

exclusive authority over a thing. The owner of a thing may *use*, *enjoy*, and *dispose* of it within the limits and under the conditions established by law." [Emphasis added.]

In the case before us, PIP possessed and employed the right to use the property. It inspected its properties as an owner would during tenants' occupancy. It leased and re-leased the units. It entered into agreements with tenants, stepping into the shoes of Trimark, the owner of the units. In at least one instance revealed by the record, PIP entered into an agreement in which the tenant recognized PIP's right to lease the subject property based on the mortgage.[7]

PIP acted as an owner would, in receiving the fruits (rent) of the units at issue here. As noted above, PIP received $281,469.69 in rent.

PIP also held the right to alienate (*abusus)* at all times relevant. Ultimately, PIP exercised that right by initiating a foreclosure auction. Although PIP was the high bidder and bought the units at issue here, the exercise of the right to force the auction is one usually possessed by an owner.

Because PIP held and exercised all three elements of ownership as defined by La. C. C. art. 477, we conclude that it became the *de facto* owner of the condominium units that were the subject of the mortgage. This court would be narrow-minded in its approach to this case if it ignored the position that PIP held in regard to the subject offices.

*Management of affairs / negotiorum gestio*

---

[7] Declaration in lease confected in May, 2018 from PIP to Fertility Institute of New Orleans, APC: Lessor is exercising its option to lease the Leased Premises pursuant to Section 9(d)(1) which right s under that provision have been exercised by Lessor of that certain Collateral Mortgage entered into by and between JPMorgan Chase Bank, NA., as mortgagee and Goldwell Investments, Inc., dated December 12,2012, of which Lessor is the successor assignee of the mortgage as mortgagee.

We turn now to the argument regarding *negotiorum gestio.* The two articles that form the core of the doctrine are La. C. C. arts. 2292 and 2297. They provide the following as guidance:

> There is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances. La. C. C. art. 2292

> The owner whose affair has been managed is bound to fulfill the obligations that the manager has undertaken as a prudent administrator and to reimburse the manager for all necessary and useful expenses. La. C. C. art. 2297

Jurisprudence regarding these articles has added a requirement that the person who manages the affairs may only use *negotiorum gestio* as an avenue to recovery if the manager had no duty to perform the acts of management. The trial court cited Coastal Environmental Specialists, Inv. V. Chem-Lig Int'l., Inc., 2000-1936, p. 20 (La. App. 1 Cir. 11/9/01), 818 So.2d 12 and Tyler v. Haynes, 1999-1921, p.7 (La. App. 3 Cir. 5/3/00), 760 So.2d 559, 563 in support of that proposition. The code articles do not make that requirement. The plain language of article 2292 only requires that the manager act "without authority". The main body of case law on this issue recites the rule that the manager must act for the benefit of the owner, not himself. The trial court's judgment and reasons are in keeping with the generally accepted jurisprudential rule of law.

Regardless of which rule we choose to follow, the result is the same here. The trial judge correctly pointed out in her judgment that the Association had a duty to maintain the building, therefore its actions were not voluntary. The Association's actions were for its own benefit as well as all condominium unit owners. Therefore, the management was not purely on PIP's behalf. Clearly, the Association did not act "without authority" as the code article requires. In the

latter two examples, the Association acted on its own behalf and with the authorization of the condominium agreement. Therefore, the Association cannot benefit by the application of La. C. C. art. 2292, *et seq*.

*Unjust enrichment.*

The trial court found that the Association was entitled to reimbursement under the law of unjust enrichment. We agree.

Both parties, the trial court and this court are in agreement that the five-part test founded on La. C. C. art. 2298 and refined by the Louisiana Supreme Court in cases such as *Baker v. Maclay Properties Co.,* 94-1529 (La. 1/17/95), 648 So. 2d 888. The elements of the test are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. [Some citations omitted.] Baker v. Maclay Properties Co., 94-1529 (La. 1/17/95), 648 So.2d 888, 897.

PIP argues that the Association failed to meet its burden as to parts one and five of the multi-part test. This court would agree that the failure of either of these two tests renders the remainder moot and would deprive the Association of any right of recovery.

In brief, PIP asks rhetorically, "Because Investment remained a mortgagee even after collecting rents, who was really enriched by Trimark's failure to pay assessments?" PIP answers its own question arguing that Trimark was the only entity enriched. We disagree.

PIP was the owner of a note and mortgage in which the debtor, Trimark, had confessed judgment. The debtor had taken no steps to prevent the holder of the debt from completing the collection process in a foreclosure sale. Instead PIP held

the subject offices and collected nearly $300,000 in rent over the course of approximately five years. During that five years, the Association maintained the office building so that PIP could continue to collect the rent without paying the related expenses. PIP was enriched by every dollar it collected in rent. Ultimately, PIP bought the offices at its own foreclosure sale and resold them at another profit.[8] None of that would have been possible if the Association had not fulfilled its obligation to maintain the common elements in a condition that made the offices commercially desirable. There is no doubt whatsoever that PIP was enriched by the expenses paid by the Association.

Next, PIP argues that the Association could and should have sued Trimark to collect its assessments. That being said, PIP concludes that a remedy other than unjust enrichment existed. Under the fifth part of the test from *Baker,* set forth above, this would mean that the Association is not entitled to prevail under the theory of unjust enrichment. With this, we also disagree.

At the outset, we note that Trimark defaulted on its debt before PIP acquired the mortgage. PIP held the note and mortgage as a litigious asset for nearly five years. During that entire time, PIP could have set the foreclosure sale and pursued Trimark for a deficiency judgment, if the proceeds of the sale did not satisfy the debt. While PIP delayed the sale and collected rents, Trimark literally went out of existence. The fact that Trimark lost its corporate life is not disputed by PIP. PIP argues that the Association should appoint a liquidator and try to collect its assessments from Trimark.[9] While this argument has some merit, we do not

---

[8] On April 9, 2021, PIP sold the units for the price of $403,025. This price was approximately $177,000 more than it bid for the same units at sheriff's auction less than six months earlier.

believe that a legally theoretical possibility of a recovery from a terminated corporation arises to the level of an alternative remedy that should deprive the Association of the right to recover under unjust enrichment.  To the same extent that PIP argues that the Association should have pursued Trimark, one might also wonder why PIP did not institute a third party action against Trimark to recoup whatever amounts for which it might be cast in judgment.

Finally, PIP argues that ruling in favor of the Association will send a message to all lenders that mortgagees will become liable for the condominium assessments of their debtors.  PIP fears that such a judgment would cause lenders to avoid Louisiana as a market, or at least, to raise interest rates. To avoid any confusion, the message this case should send to lenders is that if a debtor defaults on its mortgage, the lender should not hold the collateral asset in a suspended foreclosure for five years and collect rent derived from the asset while the debtor ceases to exist. The executory process laws of our state are peculiarly well suited to a rapid seizure and foreclosure sale.  Pausing that process in mid-stream to mine the asset for more profit should not be permitted at the expense of others.  Unjust enrichment is the perfect name for that kind of legal maneuver.

The Association cites *Carter v. Flanagan*, 455 So.2d 689, 692 (La. App. 2 Cir. 1984), where the court applied the doctrine of unjust enrichment after the primary tortfeasor had disappeared.  In brief, the Association calls the case analogous.  We believe it is.

---

[9] La. R. S. 12:1-1443 does provide for that the debts of a terminated corporation continue to exist and Glenn G. Morris & Wendell H. Holmes, *8 Louisiana Civil Law Treatise – Business Organizations, § 40:3* (July 2022 Online Update) outline a theoretical method for collection of the debts.

In *Carter*, the defendant was a con-artist who set up a scheme to obtain money from a lending institution by executing a mortgage on property that she did not own.[10] A lawsuit was filed by the true owner to cancel the fraudulent mortgage. The owner sued the lender and the notary. The notary who passed the mortgage act made a third party claim against the owner who had benefitted by the cancellation of a pre-existing mortgage against his property. The court of appeals affirmed the trial court decision that granted judgment against the owner under unjust enrichment. The owner had defended unsuccessfully by arguing that the notary's only claim was against the fraudster who had disappeared. We do not mean to suggest by analogy that PIP engaged in any fraudulent activity. The case is only analogous and meaningful in that the court granted judgment under unjust enrichment even though it was procedurally possible to pursue the actual criminal who had set the whole calamity in progress. The decision in *Carter* should be understood to mean that one who has benefitted by the act of an absent defendant cannot use the absent person as a "straw man" to shield himself from liability.

We find nothing manifestly erroneous or clearly wrong in the trial court's judgment and we affirm for the reasons above.

**AFFIRMED**

---

[10] The fraudulent scheme was more complex than the skeletal facts recounted here. We only include those facts necessary to show how the case is analogous.